## Frieden v. Frieden
*[Cite as 4 AOA 271]*

*Case No. 57032*
*Cuyahoga County, (8th)*
*Decided June 14, 1990*

N. Lindsey Smith, Esq., Norbert J. Diaz, Esq., Jerome, Smith & Condeni, One Playhouse Square, No. 400, 1375 Euclid Avenue, Cleveland, OH 44115-1899, for Plaintiff-Appellant.

Michael A. Sanson, Esq., 1640 Standard Building, Cleveland, OH 44113, for Defendant-Appellee.

Pegram Green, Esq., 340 Leader Building, 526 Superior Avenue, Cleveland, OH 44114, for Defendant-Appellee.

STILLMAN, J.

Plaintiff-appellant, Robert D. Frieden, appeals from the judgment of the Cuyahoga County Court of Common Pleas, Domestic Relations Division, which granted the appellant a divorce from the appellee, Supaporn Frieden, and in turn divided the marital assets, awarded alimony to the appellee, and required the appellant to pay the appellee's attorney fees as part of the alimony award.

On April 29, 1987, the appellant filed a complaint for divorce in the Cuyahoga County Court of Common Pleas, Domestic Relations Division, based upon the appellee's gross neglect of duty and extreme cruelty.

On August 12, 1987, a hearing was conducted before a referee appointed by the trial court. On July 20, 1988, the referee filed the Report and Recommendation of the Referee which provided that:

*"Findings of Fact:*

"1. the appellant and appellee were married in Bangkok, Thailand on October 18, 1973;

"2. two children were born of the marriage: Mark William Frieden and Michelle Ann Frieden;

"3. the appellant and appellee have lived apart since November 30, 1986;

"4. both the appellant and appellee seek custody of the children;

"5. the appellant is employed by the United States Government as a Chief Contract Administrator and earns approximately $49,000 a year;

"6. the appellee does not possess any substantial employment skills and earns $4.50 per hour;

"7. the appellant possesses a vested pension which has a present value of $20,340.79 through

November 30, 1986, the *de facto* date of the termination of the marriage;

"8. the appellant is entitled to full pension benefits at the age of 62 and will have participated in the pension plan for a period of 40 years with monthly pension benefits to be based upon a percentage of his three highest years of gross income;

"9. the appellant possesses a college degree and an advanced degree (M.B.A.) while the appellee is a high school graduate;

"10. the appellant accumulated part of his pension benefits prior to marriage which involved the time period of September 20, 1970 to October 17, 1973;

"11. the appellee stayed at home as a homemaker during the marriage;

"12. the marital residence, located at 21400 Morris Avenue, Euclid, Ohio, has a fair market value of $46,500 and the parties have accumulated a net equity of $15,500;

"13. the appellant has taken possession of monetary funds in the amount of approximately $13,667.84 (checking account - $50, liquidated bank account - $4,682.95, liquidated bank account - $3,334.89, one-half of the parties joint bank account - $5,600);

"14. the appellant has taken possession of monetary funds in the amount of $9,885.37 (one-half of the parties joint bank account - $5,600, tax returns - $861.73 and $148.64, cashed savings bonds - $3,275;

"15. the appellant is in arrearage in the amount of $280.58 for past due temporary support; and

"16. the appellee has incurred attorney fees in the amount of $7,950."

*Recommendations of the Referee*:

"1. the appellant is awarded a divorce from the appellee;

"2. custody of the two minor children is awarded to the appellant;

"3. the appellee is awarded support alimony in the amount of $102 a week;

"4. the appellant to pay an additional $10.20 a week in order to retire a support arrearage of $280.57;

"5. the appellant is to be responsible for the health care of the children;

"6. the appellant is to maintain the appellee as sole and irrevocable beneficiary of a $50,000 life insurance policy;

"7. as part of support alimony, the appellant is to secure "COBRA" continuation coverage for the appellee and obtain other coverage upon the expiration of the "COBRA" coverage;

"8. the appellant is to bear the costs associated with the psychological counseling received by the appellee;

"9. as part of a marital property division, the appellant is to receive the 1986 Celebrity automobile, the life insurance policies, the appellant's checking account, household goods and furnishings as set forth in an exhibit, and 70% of the appellant's Civil Service Retirement System Pension;

"10. as part of a marital property division, the appellee is to receive the marital home located at 21400 Morris Avenue, Euclid, Ohio, the 1982 Aries automobile, the appellee's checking account and savings account, household goods and furnishings as set forth in an exhibit, and 30% of the appellant's Civil Service Retirement System Pension;

"11. the appellant is to pay the appellee the sum of $5,650 as additional alimony for attorney fees; and

"12. the appellant is to pay the attorney feeds ($3,500) associated with the guardina ad litem appointed for the benefit of the minor children."

On August 4, 1988, the appellant filed his Objections to the Referee's Report. The appellant raised the following objections:

"1. the referee improperly divided and distributed the marital assets;

"2. the referee improperly divided the appellant's entire interest in the Civil Service Retirement System Pension thus resulting in the division of non-marital assets;

"3. the referee improperly required the appellant to pay the appellee's attorney fees;

"4. the referee improperly required the appellant to provide the appellee with a continuation policy once the "COBRA" benefits had expired; and

"5. the referee improperly awarded excessive alimony to the appellee."

On November 4, 1988, the trial court overruled the appellant's Objections to the Referee's Report and specifically approved the Report and Recommendation of the Referee.

On December 13, 1988, the trial court approved a journal entry which essentially duplicated the Report and Recommendation of the Referee. Among other things, the journal entry specifically provided that:

"1. the trial court adopts the findings of fact and conclusions of law as set forth in the Report and Recommendation of the Referee;

"2. the appellant is granted a divorce from the appellee;

"3. custody of the children is awarded to the appellant;

"4. the appellant shall pay to the appellee the sum of $102 a week as support alimony until the appellee's death or remarriage;

"5. "* * * Plaintiff (appellant) shall maintain Defendant (appellee) as a sole and irrevocable beneficiary on Fifty Thousand Dollars ($50,000) of life insurance maintained by him ***";

"6. appellant shall secure COBRA continuation coverage for the appellee, pay all required premiums, and secure alternative (health) coverage upon the termination of COBRA coverage;

"7. the appellant is to bear the costs associated with the counseling provided the appellee;

"8. as property division, the appellant is awarded the 1986 Celebrity, his life insurance policies, his checking account, specified household goods and furnishings, and a percentage of his Civil Service Retirement System Pension;

"9. as property division, the appellee is awarded the marital home, specified household goods and furnishings, the 1982 Aries, the appellee's checking and savings accounts, and a percentage of the appellants' Civil Service Retirement System Pension;

"10. the appellee is responsible for the mortgage on the marital home and is to hold appellant harmless;

"11. the appellee is awarded a 30% share, on a monthly basis, of the appellants; total benefits entitlement at retirement in the Civil Service Retirement System Pension in addition to the appellee's right to survivorship benefits;

"12. the appellant is awarded a 70% share on a monthly basis, of the appellant's total benefits entitlement at retirement in the Civil Service Retirement System Pension;

"13. the appellant shall pay to the appellee the sum of $5,650 as additional support alimony toward attorney fees; and

"14. the appellant shall pay to the guardian-ad-litem the sum of $3,500."

Thereafter, the appellant timely filed an appeal from the trial courts' judgment which divided the marital assets and awarded alimony to the appellee.

## I. THE APPELLANT'S FIRST ASSIGNMENT OF ERROR

The appellant's first assignment of error states that:

"THE JUDGMENT OF THE TRIAL COURT AS IT RELATES TO THE AWARD OF ALIMONY (PROPERTY DIVISION) IS UNREASONABLE, UNCONSCIONABLE AND ARBITRARY AND THEREFORE IS AN ABUSE OF DISCRETION."

The appellant, in his first assignment of error, argues that the trial court's division of the marital assets was unreasonable, unconscionable, and arbitrary. Specifically, the appellant argues that the division of the marital assets unduly favored the appellee and thus the trial court abused its discretion.

It should be noted that this assignment of error does not address the division of the appellant's pension. The issue of the division of the appellant's pension is dealt with in the appellant's second assignment of error.

The appellant's initial assignment of error is well taken.

R.C. 3105.18, which deals with the division of marital assets and/or the award of alimony, provides in pertinent part that:

"(A) In divorce, dissolution of marriage, or alimony proceedings, the court of common pleas may allow alimony it considers reasonable to either party.

"The alimony may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, as the court considers equitable.

"(B) In determining whether alimony is necessary, and in determining the nature, amount, and manner of payment of alimony, the court shall consider all relevant factors, including, but not limited to, the following:

"(1) The relative earning abilities of the parties;

"(2) The ages, and the physical and emotional conditions of the parties;

"(3) The retirement benefits of the parties;

"(4) The expectancies and inheritances of the parties;

"(5) The duration of the marriage;

"(6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;

"(7) The standard of living of the parties established during the marriage;

"(8) The relative extent of education of the parties;

"(9) The relative assets and liabilities of the parties;

"(10) The property brought to the marriage by either party;

"(11) The contribution of the spouse as homemaker."

In addition, a trial court in dividing marital property possesses broad discretion to effect an equitable and/or fair property division. *Worthington* v. *Worthington* (1986), 21 Ohio St. 3d 73; *Teeter* v. *Teeter* (1985), 18 Ohio St. 3d 76; *Cherry* v. *Cherry* (1981), 66 Ohio St. 2d 348.

Most recently, the Supreme Court of Ohio, in *Holcomb* v. *Holcomb* (1989), 44 Ohio St. 3d 128, declared that:

"After a divorce has been granted, the trial court is required to equitably divide and distribute the marital estate between the parties and thereafter consider whether an award of sustenance alimony would be appropriate. *Teeter* v. *Teeter* (1985), 18 Ohio St. 3d 76, 18 OBR 106, 479 N.E. 2d 890, citing to *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399, 75 O.O. 2d 474, 350 N.E. 2d 413. The trial court is vested with broad discretion in determining the appropriate scope of these property awards. *Berish* v. *Berish* (1982), 69 Ohio St. 2d 318, 23 O.O. 3d 296, 432 N.E. 2d 183. Although its discretion is not unlimited, it has authority to do what is equitable. *Cherry* v. *Cherry* (1981), 66 Ohio St. 2d 348, 355, 20 O.O. 3d 318, 322, 421 N.E. 2d 1293, 1298. A reviewing court should measure the trial court's adherence to the test, but should not substitute its judgment for that of the trier of fact unless, considering the totality of the circumstances, it finds that the court abused its discretion. Section 3(B), Article IV of the Ohio Constitution; App. R. 12; *Briganti* v. *Briganti* (1984), 9 Ohio St. 3d 220, 222, 9 OBR 529, 531, 459 N.E. 2d 896, 8989; *Kaechele* v. *Kaechele* (1988), 35 Ohio St. 3d 93, 94, 518 N.E. 2d 1197, 1199. The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 219, 5 OBR 481, 482, 450 N.E. 2d 1140, 1142. *Holcomb* v. *Holcomb, supra,* at 130.

Applying the mandates of *Cherry* v. *Cherry, supra,* and its progeny to the case *sub judice* results in the finding that the trial court did abuse its discretion in awarding the marital home and its equity to the appellee. The award of the marital home, with equity of $15,500, was unreasonable, unconscionable, and arbitrary.

The record herein fails to disclose the existence of any basis to allow the award of the entire equity in the marital home to the appellee. Such an award is completely inequitable per *Holcomb* v. *Holcomb, supra,* especially in light of the fact that the trial court awarded the appellee more than two-thirds of all the marital assets. Cf. *Martin* v. *Martin* (1985), 18 Ohio St. 3d 292; *Cherry* v. *Cherry, supra.* It should be noted that we find no abuse of discretion in the division of the balance of the marital assets which involved money, automobiles, and other personal property.

Therefore, the appellant's first assignment of error is well taken with regard to the division and award of the marital home.

## II. THE APPELLANT'S SECOND ASSIGNMENT OF ERROR

The appellant's second assignment of error asserts that:

"THE TRIAL COURT ERRED BY FAILING TO EQUITABLY AND FAIRLY DIVIDE THE PENSION WHICH ERROR CONSTITUTES AN ABUSE OF DISCRETION."

The appellant, in his second assignment of error, argues that the trial court erred by failing to equitably and fairly divide the appellant's Civil Service Retirement System Pension. Specifically, the appellant argues that the trial court's division of the appellant's pension resulted in the division of non-marital assets since the majority of the pension will be earned outside the sphere of the former marriage. Thus, the appellant argues that the appellee will receive future unearned benefits without having to make a contribution to said pension vis-a-vis the marriage.

This assignment of error is well taken.

The Supreme Court of Ohio, in *Holcomb* v. *Holcomb, supra,* established that a vested pension plan, *accumulated during marriage,* is subject to division by the trial court.

*"Domestic relations–Divorce and alimony– Vested pension plan accumulated during marriage is marital asset and must be considered in conjunction with other factors listed under R.C. 3105.18 in dividing marital assets and liabilities."* *Holcomb* v. *Holcomb, supra,* syllabus.

The Supreme Court of Ohio, however, has not dealt with the vexatious problem of how to divide a vested pension equitably and fairly between former husband and wife. A review of the case law of the state of Ohio and our sister state jurisdictions reveals that four methods of distribution have been developed in order to

divide the marital asset of a pension. These four methods of distribution involve:

"1) withdrawing the employee's interest from the fund;

"2) offsetting the present value of the nonemployee spouse's share with other marital property;

"3) offsetting the present value of the nonemployee's share with installment payments; or

"4) ordering that a percentage of the future benefits be paid directly from the fund to the nonemployee spouse, if and when the pension matures." *Baldwin's Ohio Domestic Relations Law*, 1 Volume (Cleveland Banks-Baldwin), Text 25.05(E) (3), 1987.

In the case *sub judice*, the trial court attempted to implement the fourth method of distribution by specifically ordering that the appellee receive 30% of the appellant's monthly pension benefits vis-a-vis a Qualified Domestic Relations Order as authorized by the Retirement Equity Act of 1984 (Pub. L. No. 98-397 (1984))

The Qualified Domestic Relations Order, as entered by the trial court, provided in pertinent part that:

"* * *

"*SECTION 4.* From the benefits which would otherwise be payable to Plaintiff under the Plan, Plaintiff assigns to defendant, and Defendant shall receive directly from the Plan, an amount equal to thirty percent (30%) of Plaintiff's monthly benefit at time of retirement.

"* * *

" *SECTION 6.* Defendant shall be treated as a surviving spouse of Plaintiff under Sections 401(a)(11) and (417) of the Code for purpose of determining survivor benefits. If Plaintiff predeceases Defendant, Defendant shall receive from Plaintiff's death benefits, if any under the Plan, the percentage of such benefits or amount of benefits, or sum calculated pursuant to the manner of the determination as set forth in Section 4 hereof. * * *"

The net effect of the trial court's Qualified Domestic Relations Order results in the division of assets accumulated by the appellant subsequent to the termination of the appellant's and appellee's marriage. Thus, the appellee will receive the benefit of assets to which she made no contribution. Such a division of non-marital assets is not authorized by R.C. 3105.18 nor can it be condoned by this court.

The Ashland County Court of Appeals, in *Hay* v. *Hay* (March 9, 1988), Ashland App. No. CA-887, unreported, faced the identical issue of the division of a pension accumulated during and after the termination of marriage. The Court of Appeals therein held that:

"However, before concluding his argument as stated above (that no award of benefits should go to appellee), appellant does correctly point out error in the *method* of the award. We refer to the court's decision to make what amounts to a future award of these benefits, rather than the 'present award' ordered by the Supreme Court in *Worthington, supra*, at 77. The 'future award' approach employed at trial amounts to nothing less than permitting one party (appellee) to gain an interest in another's property acquired subsequent to the divorce. Neither party has any property rights other than present ones. This court flatly rejects the reasoning of *Blair* v. *Blair* (1983), 11 Ohio App. 3d 117, wherein this speculative, post-divorce award of retirement benefits was approved by the Court of Appeals for Franklin County. (PERS benefits which correspond to the STRS benefits herein).

"It is axiomatic that after the divorce judgment has been journalized, the parties are legal strangers. Neither should be a 'slave' to the divorce judgment. However, keeping the final award of retirement benefits 'open' until one party receives them (this could be decades) flies in the face of this finality doctrine and destroys it. The fact that appellant husband cannot draw any retirement benefits, nor can he even withdraw the amount deposited, does not alter their character, i.e., marital assets which are part of the 'pie' to be carved up by the trial court, at the time of the divorce judgment." *Hay* v. *Hay, supra*, at 6.

This court finds the decision of *Hay*, as espoused by the Ashland County Court of Appeals, to be most persuasive.

The persuasiveness of *Hay* is even more convincing in light of the decision of the Supreme Court of Ohio, in *Worthington* v. *Worthington* (1986), 21 Ohio St. 3d 73, which provided that a 'present award' is most sensible when dealing with the division of marital property. See also *Troccolo* v. *Troccolo* (June 4, 1987), Cuyahoga App. No. 52312, unreported.

In the present case, the trial court adopted the referee's valuation of the appellant's pension plan at a present value of $20,340.79.[1] The trial court, in its sound discretion, was free to make a present award to the appellee of any percentage of the "present value" of the pension and to incorporate the division of the pension into a

Qualified Domestic Relations Order. However, the total amount of pension benefits which could be awarded to the appellee by the trial court should have been limited to the actual present value of the pension plan as established at the time of the divorce. The trial court did not possess the authority to divide non-marital assets as accumulated by the appellant through pension contributions made by the appellant subsequent to the termination of the marriage.

It should also be noted that the date of the appellant's and appellee's divorce must control the date of valuation of the pension plan and not the *de facto* date of separation of the parties. Cf. *Halter* v. *Halter* (January 6, 1983), Carroll County Court of Appeals, App. No. 461, unreported.

Therefore, the trial court did err in awarding the appellee 30% of the appellant's total monthly retirement payments as payable upon retirement. Such an award amounted to a division of non-marital assets.

The appellant's second assignment of error is well taken.

### "III. THE APPELLANT'S THIRD ASSIGNMENT OF ERROR

The appellant's third assignment of error asserts that:

"THE TRIAL COURT ERRED BY REQUIRING PLAINTIFF TO PAY ALL ATTORNEY FEES FOR THE DEFENDANT."

The appellant, in his third assignment of error, argues that the trial court erred in requiring the appellant to pay the appellee's attorney fees. Specifically, the appellant argues that the trial court's award of attorney fees to the appellee as alimony and the requirement to pay the attorney fees of the guardian ad litem was unreasonable and an abuse of discretion.

This assignment of error is not well taken.

Ohio case law has firmly established that the trial court possesses the inherent authority to award attorney fees as part of alimony. *Swanson* v. *Swanson* (1976), 48 Ohio App. 2d 85. In addition, the award of attorney fees as a part of alimony is a matter within the sound discretion of the trial court. *Cohen* v. *Cohen* (1983), 8 Ohio App. 3d 109.

As dealt with in the appellant's first assignment of error, the record demonstrates that the appellant is gainfully employed, earns a relatively substantial salary of $49,000 a year, and is in good physical and metal condition. The appellee, to the contrary, possesses no marketable employment skills and is earning hourly wages slightly above minimum wage in the amount of $4.50 an hour.

In light of the fact that the appellee is responsible for the mortgage on the marital home and has received essentially non-liquid assets in the form of a $15,000 equity within the marital home, the trial court's award of attorney fees to the appellee in the form of alimony and the trial court's order to bear the cost of the guardian ad litem was neither unreasonable nor an abuse of discretion. *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217.

Thus, the appellant's third assignment of error is not well taken.

### IV. THE APPELLANT'S FOURTH ASSIGNMENT OF ERROR

The appellant's fourth assignment of error charges that:

"THE TRIAL COURT DID NOT CRITICALLY REVIEW THE REPORT AND RECOMMENDATION OF THE REFEREE, DID NOT GIVE PROPER CONSIDERATION TO THE OBJECTIONS FILED BY THE APPELLANT AND IN DOING SO. MERELY APPROVED WITHOUT PROPERT (SIC) CONSIDERATION THE REPORT OF THE REFEREE, ALL OF WHICH CONSTITUTE AN ABUSE OF DISCRETION."

The appellant, in his fourth assignment of error, argues that the trial court did not critically review the Report and Recommendation of the Referee. Specifically, the appellant argues that the trial court merely "rubber stamped" the Report and Recommendation of the Referee especially in light of the Objections to the Referee's Report as filed by the appellant.

This assignment of error is well taken.

A trial court, regardless of the filing of an objection to the referee's report, possesses the duty and responsibility to critically review and verify the correctness of the referee's report prior to approval of the report and the entry of judgment.

"Our determination in this matter is further prompted by the high regard in which we hold the function of the judiciary. It is the primary duty of the court, and not the referee, to act as a judicial officer. Indeed, the court must approve the referee's report and enter it upon its own record in order for that report to have any validity or binding effect. Civ. R. 53(E)(5). As was stated in the 1970 Staff Note to Civ. R. 53:

"'* * * Rule 53 contemplates that a referee *shall aid the court* in the expedition of the court's business and *not be a substitute* for the functions of the court.' (Emphasis added.)

"In order for the trial court to maintain its independence, it is of utmost importance that it carefully examine any report before it for errors. Accordingly, we reject any concept which would suggest that a trial court may in any way abdicate its function as judge over its own acts. We therefore hold that, even in the absence of an objection to a referee's report, the trial court has the responsibility to critically review and verify to its own satisfaction the correctness of such a report." *Normandy Place Assoc.* v. *Beyer* (1982), 2 Ohio St. 3d 102, at 105.

Thus, the trial court herein was duty bound to fully and completely examine the report and recommendation of the referee prior to the entry of judgment.

Herein, the referee recommended that the appellee be awarded a 30% share of the appellant's total accumulated pension as a part of the division of the marital assets. The trial court, despite the objections of the appellant, adopted the referee's recommendation as to the division of the appellant's pension plan.

As dealt with in the appellant's second assignment of error, the trial court erred in dividing the appellant's pension plan on the basis of the inability to divide non-marital assets. The trial court should have divided the pension plan based upon a present award. Thus, this court can but conclude that the trial court failed to critically review the report and recommendation of the referee.

In addition, the trial court's adoption of the referee's recommendation that: 1) the appellant provide the appellee with continued medical coverage without qualification of termination (such as remarriage); 2) the order that the appellee be made an *irrevocable* beneficiary to a $50,000 life insurance policy; and 3) the payment of costs associated with the psychological counseling of the appellee without qualification of termination further demonstrates the failure of the trial court to critically review and verify the correctness of the referee's report.

Therefore, the appellant's fourth assignment of error is well taken.

### V. THE APPELLANT'S FIFTH ASSIGNMENT OF ERROR

The appellant's fifth assignment of error declares that:

"THE TRIAL COURT ERRED BY FAILING TO RULE UPON A PENDING MOTION OF PLAINTIFF-APPELLANT TO MODIFY A PREVIOUS ORDER FOR SUPPORT PENDENTE LITE."

The appellant, in his fifth assignment of error, argues that the trial court erred by failing to rule on a pending motion prior to the entry of judgment. Specifically, the appellant argues that the trial court erred by failing to rule on a motion captioned "Motion to Modify the Previous Order of Support."

This assignment of error is not well taken.

This court, with regard to the failure of trial court to rule on a pending motion prior to the entry of judgment, has established that it will be presumed that any motions not ruled upon prior to the entry of judgment are overruled. *Solon* v. *Solon Baptist Temple, Inc.* (1982), 8 Ohio App. 3d 347; *Sawchyn* v. *Middleburg Heights* (January 19, 1989), Cuyahoga App. No. 54858, unreported.

In addition, a review of the record clearly indicates that the trial court, by awarding alimony in the amount of $102 a week, did in effect modify the previous order of support.

Therefore, the appellant's fifth assignment of error is not well taken.

### VI. THE APPELLANT'S SIXTH ASSIGNMENT OF ERROR

The appellant's sixth assignment of error asserts that:

"THE ALIMONY AWARD FOR SUSTENANCE AND SUPPORT WAS EXCESSIVE AND CONSTITUTED AN ABUSE OF DISCRETION."

The appellant, in his sixth assignment of error, argues that the trial court erred in awarding support alimony to the appellee. Specifically, the appellant argues that the trial court's award of support alimony was excessive and was thus an abuse of discretion.

This assignment of error is not well taken.

As previously stated with regard to the appellant's first assignment of error, R.C. 3105.18 enunciates the factors which are to be considered by the trial court in awarding alimony. In addition, the award of alimony rests within the sound discretion of the trial court and such an award will *not* be disturbed upon appeal unless the trial court abused its discretion. *Martin* v. *Martin, supra; Cherry* v. *Cherry, supra; Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399.

Herein, the record does not reveal that the trial court abused its discretion in the division of the marital assets (with the exception of the pension division) not did the trial court abuse its discretion in awarding the appellee $102 a week in support alimony. The record, in conjunction with the factors to be considered by the trial court as mandated by R.C. 3105.18, clearly

justifies the trial court's award of support alimony to the appellee.

The appellant is well educated, healthy and possesses a yearly average gross income of $49,000. The appellee, however, is poorly educated, suffers from both physical and mental difficulties, and possesses no marketable employment skills. On this basis, the trial court did not abuse its discretion in awarding the appellee support alimony in the amount of $102 a week.

The appellant's sixth assignment of error is not well taken.

Judgment affirmed in part, reversed in part and remanded to the trial court.

Upon remand, the trial court is ordered to review and divide the marital asset of the appellant's pension based upon the pension's present value as determined by the actual date of the judgment of divorce. The trial court is further ordered to review and redetermine its adoption of the referee's report which required that: 1) the appellee be made an irrevocable beneficiary of a life insurance policy; 2) the appellant provide the appellee with continued and unlimited health care coverage; and 3) the appellant provide the appellee with continued and unlimited psychological counseling.

The award of life insurance benefits, health care coverage, and psychological counseling must be made with a qualification of termination. In addition, the trial court is ordered to review and redetermine the division and award of the marital home between the appellant and the appellee.

Judgment accordingly.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

PATTON, C.J., and SWEENEY, J., concur.

Sitting by Assignment, Judgment Saul G. Stillman, Retired Judge of the 8th Appellate District.

---

[1] This valuation in itself in relation to the marriage of the appellant and appellee and contribution was deficient in that the appellant had contributed to the pension plan for a period of three years and one month prior to the marriage.