NORMANDY PLACE ASSOCIATES, APPELLEE, *v.* BEYER ET AL., APPELLANTS.

[Cite as Normandy Place Assoc. *v.* Beyer (1982), 2 Ohio St. 3d 102.]

(No. 82-164—Decided December 29, 1982.)

104

*Messrs. Cross & Turner, Mr. Gerald L. Turner* and *Mr. Emerson R. Keck,* for appellee.

*Messrs. Slicer, Hall & Slicer* and *Mr. David L. Hall,* for appellants.

CLIFFORD F. BROWN, J. The issue presented herein is whether the filing of a Civ. R. 53(E) objection to a referee's report is a prerequisite for appellate review of a finding or recommendation made by a referee and adopted by a trial court. For the following reasons we hold that it is not.

Appellants contend that appellee's failure to specifically object to certain language contained in the referee's report precludes review of that question at the appellate level. Such an argument is predicated on the well-established rule regarding the preservation of a claim of error:

"Ordinarily, errors which arise during the course of a trial, which are not brought to the attention of the court by objection or otherwise, are waived and may not be raised upon appeal." *Stores Realty Co.* v. *Cleveland* (1975), 41 Ohio St. 2d 41, 43 [70 O.O.2d 123]. See, also, *State* v. *Glaros* (1960), 170 Ohio St. 471 [11 O.O.2d 215], paragraph one of the syllabus.

This general principle, however, must be read in conjunction with Civ. R. 53(E)(2), which sets forth the procedure to be followed when a party elects to file objections to a referee's report. It states as follows:

"A party *may,* within fourteen days of the filing of the report, serve and file written objections to the referee's report. Such objections shall be considered a motion. Objections shall be specific and state with particularity the grounds therefor. Upon consideration of the objections the court may: adopt, reject, or modify the report; hear additional evidence; return the report to the referee with instructions; or hear the matter itself." (Emphasis added.)

Clearly, this rule does not mandate the filing of objections to a referee's report. Had the drafters of the Civil Rules intended that the failure to file objections would preclude appellate review, they could easily have stated so explicitly. Instead, they chose to employ the word "may," which has traditionally been interpreted as merely conferring a right or privilege on a party rather than imposing on him an obligation to act. In view of the permissive construction customarily afforded the word "may" and in the absence of a clear warning of the consequences entailed in the failure to file objections, this court is reluctant to deprive a party of such a substantial right as the right of appeal.

Our determination in this matter is further prompted by the high regard in which we hold the function of the judiciary. It is the primary duty of the court, and not the referee, to act as a judicial officer. Indeed, the court must approve the referee's report and enter it upon its own record in order for that report to have any validity or binding effect. Civ. R. 53(E)(5). As was stated in the 1970 Staff Note to Civ. R. 53:

"* * * Rule 53 contemplates that a referee *shall aid the court* in the expedition of the court's business and *not be a substitute* for the functions of the court." (Emphasis added.)

In order for the trial court to maintain its independence, it is of utmost importance that it carefully examine any report before it for errors. Accordingly, we reject any concept which would suggest that a trial court may in any way abdicate its function as judge over its own acts. We therefore hold that, even in the absence of an objection to a referee's report, the trial court has the responsibility to critically review and verify to its own satisfaction the correctness of such a report.

Although we agree with the court of appeals' resolution of the question certified for review, we find error in the manner in which that court determined the rights of the parties under the contract, under App. R. 12(B), "as a matter of law."[1]

The substantive issue in the present case centered around the referee's finding that "[u]nder Ohio law, an agreement to make an agreement in the future is not an enforceable contract." This is clearly an erroneous statement.

As correctly noted by the court of appeals, Ohio has long recognized the general validity of preliminary agreements to lease. See *Rhodes* v. *Baird* (1866), 16 Ohio St. 573; *Kirkland* v. *Wolf* (1878), 7 Dec. Rep. 436. It is thus not the law that an agreement to make an agreement is *per se* unenforceable. The enforceability of such an agreement depends rather on whether the parties have manifested an intention to be bound by its terms and whether these

---

[1] The court of appeals did not find that the trial court's decision was against the manifest weight of the evidence, but that the lower court applied the wrong law in reaching its conclusion. Acting presumably under App. R. 12(B), the court then proceeded to weigh the evidence in the record and determine the rights of the parties under the contract.

intentions are sufficiently definite to be specifically enforced. See, generally, Restatement of Contracts 2d 75, Section 26; 1 Corbin on Contracts 97, Section 30.

The referee in the case at bar precluded resolution of these issues when he concluded that all agreements to lease are *per se* unenforceable. The fact that the referee misstated the prevailing law, however, did not entitle appellee "to have judgment or final order rendered in [its] favor *as a matter of law*" within the meaning of App. R. 12(B).[2] Whether the parties intended a contract remains a factual question, not a legal one, and as such is an issue to be resolved by the finder of fact. *Arnold Palmer Golf Co.* v. *Fuqua Industries, Inc.* (C.A. 6, 1976), 541 F. 2d 584, 588. App. R. 12(B) does not authorize a reviewing court to reverse the decision of a trial court and enter final judgment under these circumstances.

Because the issue of the parties' intent to be bound is a proper one for resolution by the trier of fact, we reverse that part of the judgment of the court of appeals which determined the rights of the parties under the contract. Accordingly, we remand this cause to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part, and cause*
*remanded.*

CELEBREZZE, C.J., SWEENEY and HOLMES, JJ., concur.

W. BROWN, J., concurs in paragraphs one and two of the syllabus and in the judgment.

LOCHER and KRUPANSKY, JJ., dissent.

KRUPANSKY, J., dissenting. In my view, the majority opinion undermines a cardinal rule of appellate procedure: "an appellate court will not consider any error which could have been brought to the trial court's attention, and hence avoided or otherwise corrected." *Schade* v. *Carnegie Body Co.* (1982), 70 Ohio St. 2d 207, at page 210 [24 O.O.3d 316]. I must, therefore, respectfully dissent.

The majority's reliance upon the use of the word "may" in Civ. R. 53(E)(2) is misplaced. The word "may" is necessarily employed in the rule to

---

[2] App. R. 12(B) provides in pertinent part:

"* * * When the court of appeals determines that the trial court committed error prejudicial to the appellant *and that the appellant is entitled to have judgment or final order rendered in his favor as a matter of law,* the court of appeals shall reverse the judgment or final order of the trial court and render the judgment or final order that the trial court should have rendered, or remand the cause to the court with instructions to render such judgment or final order. * * *"
(Emphasis added.)

allow a party the option of accepting the referee's report. Suppose a party has no objections to the referee's report. Then, of course, the rule does not mandate the filing of objections. If the rule read "a party *must* file objections," then the rule would be reduced to an absurdity; this would make it mandatory for a party to file objections, even though the referee's report was acceptable and no appeal was contemplated. The common sense reading of the rule dictates a party has the option to file objections depending upon whether the referee's report is embraced or an appeal is anticipated. The rule states simply: "a party may * * * serve and file written objections to the referee's report." Similarly, a party "may" object to the admission of evidence at trial, "may" take exception to the court's ruling on the objection and "may" assign the ruling as error on appeal. But, as every attorney familiar with the elementary principles of appellate procedure knows, one *must* object in order to claim error on appeal. The countless repetitions of this fundamental rule provide clear warning of the consequences entailed in the failure to object both in the civil as well as the criminal areas of the law. See, *e.g., State* v. *Morris* (1975), 42 Ohio St. 2d 307 [71 O.O.2d 294]; *Stores Realty Co.* v. *Cleveland* (1975), 41 Ohio St. 2d 41 [70 O.O.2d 123]; *Moats* v. *Metropolitan Bank of Lima* (1974), 40 Ohio St. 2d 47 [69 O.O.2d 323]; *State* v. *Childs* (1968), 14 Ohio St. 2d 56 [43 O.O.2d 119]; *Hamlin* v. *McAlpin Co.* (1964), 175 Ohio St. 517 [26 O.O.2d 206]; *State* v. *Glaros* (1960), 170 Ohio St. 471 [11 O.O.2d 215]; *In re Bowen* (1943), 141 Ohio St. 602 [26 O.O. 173].

It is axiomatic that when objections are not made, errors are presumed to be waived. "Ordinarily, errors which arise during the course of a trial, which are not brought to the attention of the trial court by objection or otherwise, are waived and may not be raised upon appeal." *Stores Realty Co., supra,* at page 43. This rule, settled beyond question, is succinctly stated in paragraph one of the syllabus in *State* v. *Morris, supra:*

"An appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. (Paragraph three of the syllabus in *State* v. *Childs,* 14 Ohio St. 2d 56 [43 O.O.2d 119], approved and followed.)"

In addition, the majority's holding defeats the purpose of the use of referees. According to the 1970 Staff Note to Civ. R. 53, the rule "contemplates that a referee shall aid the court in the expedition of the court's business." Thus, the reference system was instituted to facilitate the prompt and efficient resolution of disputes and to alleviate some of the tremendous overload on trial courts. The majority accomplishes the opposite result by placing the responsibility upon the trial court to scrutinize the referee's report, search for errors and anticipate all possible grounds for objection.

The trial judge is now required to conduct an in-depth study of every referee's report, whether or not the parties intend to appeal or otherwise dispute the referee's findings. In my view, it is senseless to force the trial court to labor over these reports when the parties have indicated, by not ob-

jecting, that they have no intention of appealing. The majority shifts the burden from the referee to an already greatly overburdened trial court, and the trial court is placed in the improper position of assuming the responsibilities of the attorneys in an adversary system.

As a result of the majority's ruling, the parties are permitted to neglect calling errors to the attention of the trial court at a time when such errors could have been avoided or corrected by the trial court. The trial court is thereby circumvented, and the court of appeals, supplanting the function of the trial court, is required to rule on objections which should have been raised by the parties at the trial court level.

For the above reasons, I would reverse the judgment of the court of appeals, insofar as it held the filing of objections to a referee's report is not a prerequisite to appellate review of a finding or recommendation made by a referee.

LOCHER, J., concurs in the foregoing dissenting opinion.