**In re: The Smith Children**
*[Cite as 3 AOA 336]*

*Case No. CA89-06-037*
*Warren County, (12th)*
*Decided May 29, 1990*

Timothy A. Oliver, Warren County Prosecuting Attorney, Samuel N. Lillard, 313 East Warren Street, Lebanon, Ohio 45036, for Warren County Children's Services, Appellant.

Nash, Nash, Williamson & Stoess, Ray H. Stoess, Jr., 235 South Fifth Street, Louisville, Kentucky 40202-3255, for Mike and Vanessa Smith, Appellees.

Timothy Tepe, 1063 Second Street, Franklin, Ohio 45005, Guardian Ad Litem.

*Per Curiam.*

This cause came on to be heard upon an appeal, transcript of the docket, journal entries and original papers from the Warren County Court of Common Pleas, Juvenile Division, transcript of proceedings, briefs and oral arguments of counsel.

Now, therefore, the assignments of error having been fully considered are passed upon in conformity with App. R. 12(A) as follows:

This is an appeal by Warren County Children's Services from a decision of the Warren County Court of Common Pleas, Juvenile Division, denying children's services' motion for permanent custody of the children of appellees, Mike and Vanessa Smith.

Appellees were married in 1978, when Vanessa was only sixteen years old. Within a period of six years, the couple had five children, Andrew, Jennifer, Rebecca, Laura and Christopher. After the birth of her children, Vanessa suffered from post-partum depression. She also had problems with immaturity and learning to properly discipline her children. As a result, the children suffered some physical and emotional abuse. Because of her fear of further harming her children, she referred herself to Warren County Children's Services to have her children placed temporarily outside the home.

On July 17, 1986, children's services filed a dependency/abuse complaint on behalf of the five Smith children. On March 20, 1987, the trial court approved a reunification plan.

Two years later, on January 17, 1989, appellees filed a motion pursuant to R.C. 2151.415(F) to terminate temporary custody vested in children's services and to return the children to their natural parents without restrictions or, in the alternative, with protective supervision. The following day, children's services filed a motion for a permanent custody of the children pursuant to R.C. 2151.413 and 2151.415(D) (3). Hearings were held on these motions before a referee on various dates in April and May, 1989. Testimony revealed that Vanessa Smith had received medication to cure her depression and no longer needed treatment. Appellees received both individual and marital counseling and attended parenting classes as required by the plan. They also exhibited an unwavering commitment to have their children returned to them. Testimony also revealed that the children exhibited emotional and behavioral problems, with Andrew's and Laura's being the most severe. Each of the children were placed in a number of foster homes, each more restrictive than the previous one, during the period of the plan. Testimony from mental health professionals indicated that they were in desperate need of stability in their lives.

Psychologists and case workers who appeared as witnesses for children's services testified that although appellees had attended an exhausting number of counseling sessions pursuant to the plan, they had not made sufficient progress to have the children returned to them and that they would be unable to handle five

emotionally disturbed children. They testified that the children's problems had become more severe over the course of the plan and indicated that the children's problems stemmed from the abuse in the parent's home; however, they admitted on cross-examination that the constant movement of the children from foster home to foster home had aggravated their condition. These witnesses' testimony also indicated that children's services had abandoned the goal of reuniting parents and children and had decided to seek permanent custody as early as 1987.

Witnesses for appellees included their relatives and friends who testified that both Mike and Vanessa Smith had improved in parental skills and maturity over the course of the plan. These witnesses testified that they were unafraid to leave their children with appellees. A psychologist, who did an independent evaluation of appellees, testified that they were capable of handling the children at this time and that they did not exhibit the psychological problems that children's services claimed they did. He also indicated that the constant movement of the children while they were in the custody of children's services was detrimental to the children's emotional stability.

The childrens' guardian *ad litem* also testified. He indicated that he did not observe the behavioral problems of the children that children's services claimed they exhibited and that, in his opinion, it was the constant movement of the children that caused any deterioration of their emotional condition. He observed the interaction between the children and the parents and saw no problems. He also testified that he had seen much maturity in the parents and that all the children had expressed a desire to be reunited with their natural parents. He recommended that the children be returned to the parents on a staggered basis.

The referee's report, filed on June 5, 1989, recommended (1) that Rebecca and Jennifer Smith be returned to their natural parents within twenty days; (2) that the youngest child, Christopher Smith, be returned to the natural parents within six months; and (3) that Andrew and Laura Smith be placed in long-term foster care with the goal that they be returned to their parents. The trial court's judgment entry adopting the referee's report was filed at the exact same time as the report. This appeal followed.

Children's services presents three assignments of error for review. In its first assignment of error, it states that the trial court erred in adopting the referee's report without making its own independent analysis of the case and without waiting for the expiration of the fourteen-day period allowed by Juv. R. 40(D)(2) for the filing of written objections. It argues that because the referee's report and the judgment entry adopting the report were filed at the exact same time, the judge could not have made an independent analysis of the report and that they were denied the opportunity to file objections to the report. We find this assignment of error is not well-taken.

Juv. R. 40(D)(5) provides:

"The report of a referee shall be effective and binding only when approved and entered as a matter of record by the court. The referee's findings of fact must be sufficient for the court to make an independent analysis of the issues and to apply appropriate rules of law in reaching a judgment order. The court may adopt the referee's recommendations about appropriate conclusions of law and the appropriate resolutions of any issues. However, the court shall determine whether there is any error of law and other defect on the face of the referee's report even if no party objects to such an error or defect. The court shall enter its own judgment on the issues submitted for action and report by the referee."

Thus, it is clear that even in the absence of any objection to the referee's report, the trial court has a responsibility to critically review and verify to its own satisfaction the correctness of the report. *Normandy Place Assoc. v. Beyer* (1982), 2 Ohio St. 3d 102, paragraph two of the syllabus. "[I]t is of the utmost importance that it carefully examine any report before it for errors." *Id.* at 105.

In the present case, the referee's report was comprehensive and contained sufficient findings of fact for the trial judge to be able to make an independent analysis of the validity of the report. See *Nolte v. Nolte* (1978), 60 Ohio App. 2d 227. However, because the report and judgment entry were entered at the same time, the trial judge could not possibly have made an independent analysis of the report. He merely "rubber stamped" it, a practice which has been severely condemned. See *Id.* at 231. The trial court erred in failing to independently analyze the referee's report. We cannot condone such a practice and we caution the trial court about using such a procedure in the future.

Appellees argue that children's services waived any error in the adoption of the referee's

report because it failed to file objections pursuant to Juv. R. 40(D)(2). Children's services, on the other hand, argues that it was precluded from filing objections to the referee's report because the report and the judgment entry adopting the report were filed at exactly the same time. However, Juv. R. 40(D)(7) provides that the trial court may enter judgment on the basis of a referee's report without waiting for objections by the parties, but that the filing of objections operates as an automatic stay of execution of that judgment until the court disposes of the objections. Therefore, children's services was free to file objections to the report even though the trial court had already filed a judgment entry.

Nevertheless, in *Normandy Place, supra*, paragraph one of the syllabus, the supreme court held that the filing of objections to a referee's report is not a prerequisite for appellate review of a finding or recommendation made by a referee and adopted by the trial court. Accordingly, we cannot find that the error is waived because children's services failed to file objections.

The trial court erred in failing to independently analyze the referee's report. However, the existence of error does not necessarily require a reversal unless the error is prejudicial to the complaining party. The error must affect the substantial rights of the complaining party, or substantial justice must not have been done. Civ. R. 61 *O'Brien* v. *Angley* (1980), 63 Ohio St. 2d 159, 164; *McQueen* v. *Goldey* (1984), 20 Ohio App. 3d 41, 44. Generally, in order to find that substantial justice has been done, the reviewing court must not only weigh the prejudicial effect of the error but also determine that, if the error had not occurred, the trier of fact would probably have made the same decision. *O'Brien, supra*, at 164-65.

Children's services had the burden to prove by clear and convincing evidence that granting its motion for permanent custody was in the best interest of the children. R.C. 2151.414. The evidence amply supports the referee's conclusion that children's services failed to meet that burden. We find no prejudice to children's services because of the trial court's error as the trial court could not have reached a different conclusion. We fail to understand why children's services pursued this appeal. Our research reveals no other instance in which a state agency appealed a decision in a dependency/neglect case. If the children suffer further abuse or neglect at the hands of their parents, children's services has a number of options to remedy the situation including removing the children from the home. After all, the role of children's services is to protect the welfare of the children. Yet, in this case, it seems to have placed itself in the position of being the adversary of the parents no matter what the cost to the children. The evidence overwhelmingly established that the children needed stability in their lives and that the parents could provide that stability. We cannot find that children's services was prejudiced by the referee's decision, especially when we balance its interest in obtaining permanent custody of the children against the parents' precious and fundamental right to the care and custody of their children. Accordingly, we find the error to be harmless and children's services' first assignment of error is overruled.

In its second assignment of error, children's services states that the trial court erred in adopting the referee's report recommending that Andrew and Laura Smith be placed in long-term foster care. It argues that the court did not have the authority to make an order placing the children in long-term foster care when it was not requested in the complaint. We find this assignment of error is not well-taken.

Children's services relies upon R.C. 2151.353 (B) which states:

"No order for permanent custody or temporary custody or the placement of a child in long-term foster care shall be made pursuant to this section, unless the complaint alleging the abuse, neglect or dependency contains a prayer requesting permanent custody, temporary custody or placement of the child in long-term foster case desired, * * *."

However, this portion of the statute is inapplicable to the present case. R.C. 2151.353 refers to the initial dispositional hearing which must be held at least one day but not more than thirty days after the adjudicatory hearing pursuant to R.C. 2151.35(B)(1). R.C. 2151.353(B) places the burden on the state to specify at the initial dispositional hearing which of the dispositional alternatives set forth in R.C. 2152.353(A)(1) it is seeking. Because of the short length of time between the adjudicatory and dispositional hearings, attempts at reunification have often not been made at this stage. Therefore, the trial judge should not order the more drastic dispositional alternatives of long-term foster care or granting permanent custody to the agency unless the special conditions specified in the statute exist, as preference is given to returning the child to his parents under the new provisions

of R.C. Chapter 2151. See R.C. 2151.01(C); 2 Anderson's Ohio Family law (2d Ed 1989), 347-49, Section 21.16 and 314-16, Section 20.7. Once the initial disposition is made, children's services has the option to file post-dispositional motions as provided for in R.C. 2151-413 and 2151.415. If children's services files a motion for permanent custody, the court must follow the procedures set out in R.C. 2151.414.

In the present case, the initial disposition had already been made as the court granted children's services temporary custody of the children pursuant to R.C. 2151.353(A)(2). Subsequently, the Smiths filed a post-dispositional motion to have the children returned to them pursuant to R.C. 2151.415(F). The children's services filed a motion for permanent custody pursuant to R.C. 2151.413 and R.C. 2151.415(D)(3). Pursuant to these sections, the movant may request any of the dispositional alternatives set forth in R.C. 2151.415(A)(1) through (5), including long-term foster care. The court will then hold a hearing and after taking into consideration the best interest of the child, may order any of the dispositional alternatives set forth in that section. If permanent custody is requested, the court must proceed pursuant to R.C. 2151.414.

Thus, it is clear that under the procedural posture of this case, the court was proceeding pursuant to R.C. 2151.414 and R.C.2151.415. Under these sections, the court has authority to order any of the dispositional alternatives it deems appropriate, as long as that alternatives is in the best interest of the child. There is no language in either of these statutes which limits the court to the disposition requested in the original complaint.

Accordingly, we find no error by the trial court in ordering that Andrew and Laura Smith be placed in long-term foster care, as such an order was clearly supported by the evidence. Accordingly, children's services' second assignment or error is overruled.

In this third assignment of error, children's services states that the decision of the trial court returning the youngest child, Christopher Smith, to his natural parents within six months is against the manifest weight of the evidence. It argues that the evidence showed that it was in the best interest of Christopher to be adopted into his foster home. We find this assignment of error is not well-taken.

R.C. 2151.414(B) provides that the court may grant permanent custody to a movant if the court determines by clear and convincing evidence that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion and that the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents. In making this determination, the court should consider all relevant factors including the factors specifically enumerated in R.C. 2151.414(D) and (E).

Children's services bears the burden of proving its case by clear and convincing evidence. Clear and convincing evidence is that which will produce in the minds of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re: Adoption of Holcomb* (1985), 18 Ohio St. 3d 361, 368.

Judgments supported by some competent credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C. E. Morris* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279; *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77.

In regard to Christopher, the referee stated: "As to Christopher, an adoption into his present foster home would clearly benefit the child as that has been his primary functioning custodial and family relationship during his young life."

However, the referee went on to conclude that, "children's services in its motion for permanent custody, has failed to persuade the court that it is in the best interests of each of these three children [Rebecca, Jennifer, and Christopher] for parental rights to be completely terminated. The case of Christopher is the most compelling presented by the agency, but in truth, he has become a functioning member of another family primarily due to the long-term of this plan the agency has not, as to Christopher, demonstrated a lack of subparagraph (E)(1), 'parental utilization' in section 2151.414."

The evidence amply supports the referee's conclusion. Children's services failed to prove that Christopher could not or should not be returned to his parents or that it was in his best interest that children's services be awarded permanent custody. Essentially, children's services is arguing that its witnesses were more credible, but matters as to the credibility of witnesses are for the trier of fact to decide. *Seasons Coal Co, supra,* at 80. Accordingly, the third assignment of error is overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is affirmed.

*Judgment affirmed.*

JONES, P.J., HENDRICKSON and KOEHLER, JJ., concur.