[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
JUDGMENT ENTRY.
{¶ 1} This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
{¶ 2} Appellant Jeffrey Pauley appeals from two separate entries of the Hamilton County Juvenile Court. In an entry dated July 11, 2001, the juvenile court rejected a magistrate's decision that had dismissed a grand-theft charge against Pauley, entered an adjudication of delinquency, and placed Pauley on probation for investigation purposes. In an entry dated August 6, 2001, the court committed Pauley to the permanent custody of the Ohio Department of Youth Services until age 21. The court suspended the commitment on the condition that Pauley obey all laws and orders of the court. The court also ordered Pauley to pay a $100 fine, court costs, and restitution. Pauley raises four assignments of error for our review.
{¶ 3} For simplicity of discussion, we first address Pauley's second assignment of error. In that assignment, Pauley challenges the sufficiency of the evidence adduced in support of his delinquency adjudication. The juvenile court adjudicated Pauley a delinquent child for conduct that, if engaged in by an adult, would have constituted the offense of grand theft in violation of R.C. 2913.02. R.C. 2913.02
provides,
 No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent.
 R.C. 2913.02(B)(2) further provides, "If the value of the property or services stolen is five thousand dollars or more and is less than one hundred thousand dollars, a violation of this section is grand theft, a felony of the fourth degree."
{¶ 4} At the hearing before the magistrate, the state presented testimony from a co-defendant, James Vasquez. Vasquez testified that he, Pauley, and six other teenage boys had gone to a dance club in the early morning hours of August 6, 2000. Shortly after their arrival, the dance club closed and the group walked back to a van that was driven by a co-defendant, Tony Serizi. While they were seated in the van, Vasquez began talking about taking a beer trailer that was parked in a lot near the dance club and hitching it up to the van. Vasquez announced his plan to the group and stated that if they could "pull this off," it would "be the biggest heist in the county."
{¶ 5} Shortly thereafter, one of the young men in the group, Josh Faust, asked to be taken home. The group then drove Faust home and came back to the beer trailer. Vasquez testified that he then hitched the beer trailer to the back of the van, and they began driving towards the I-275 entrance. While en route, the van passed a parked police vehicle, and, according to Vasquez, everyone in the van celebrated the fact that they were not stopped by the police. When asked about Pauley, Vasquez testified that he had a smile on his face.
{¶ 6} After passing the police car, Vasquez testified, everyone in the group, including Pauley, began discussing how and where to open the beer trailer. The group then decided to park the beer trailer at a lot on Mulhauser Road. Vasquez testified that he got out of the van and unhitched the trailer. The group then drove to the home of a co-defendant, Brian Dillon, to pick up some tools to open the trailer. After retrieving the tools, the group drove back to the trailer.
{¶ 7} Vasquez testified that he popped open the locks on the trailer and that he, along with five other co-defendants, began moving ten kegs of beer into the van. Vasquez testified, however, that Pauley and his friend remained inside the van and helped to arrange the kegs. The group then dropped Pauley and his friend off with two kegs of beer at Pauley's friend's home. Vasquez admitted on cross-examination that he had been encouraged to testify so he would not be sent to the Department of Youth Services. The state then called police officer Kevin Wedig, who testified that the beer trailer was recovered in Butler County.
{¶ 8} In viewing this evidence in the light most favorable to the state, we conclude that "any rational trier of fact could have found the essential elements of [grand theft] beyond a reasonable doubt."[1]
Pauley stipulated to his age, lack of consent, the fact that the beer trailer was taken in Hamilton County, and that its value exceeded $5,000. Along with these stipulations, the state presented evidence from co-defendant Vasquez that Pauley had actively participated in the theft of the beer trailer by expressing his elation about the theft, participating in a group discussion on how to break into the trailer, helping to arrange the beer kegs in the van, and sharing in the stolen property. Thus, we overrule the second assignment of error.
{¶ 9} In his third assignment of error, Pauley argues that the juvenile court did not have the authority to reverse the magistrate's decision not to make a delinquency adjudication. In his fourth assignment of error, Pauley contends that even if the juvenile court had the authority to reverse the magistrate's decision, the court should have remanded the matter to the magistrate for a new trial. Because these assignments of error are interrelated, we discuss them together.
{¶ 10} Under Ohio law, the juvenile court may refer matters to a magistrate.[2] When the court refers a matter to a magistrate, the magistrate must conduct all proceedings necessary for a decision on the referred matters, including preparing, signing and filing a magistrate's decision.[3] The court then must make an independent analysis of the magistrate's decision. It has the responsibility to critically review and to verify to its own satisfaction the correctness of the decision.[4]
{¶ 11} After reviewing a magistrate's decision, the juvenile court may then adopt, reject, or modify the decision, hear additional evidence, recommit the matter, or hear the matter itself.[5] If the magistrate's decision does not contain sufficient facts from which the juvenile court can make an independent analysis, the court cannot adopt the magistrate's decision.[6]
{¶ 12} We agree with the state that the juvenile court in this case was not legally bound by the legal conclusions of the magistrate and that it could reject the magistrate's decision.[7] Juv.R. 40 explicitly provides that a trial court may reject a magistrate's decision. Consequently, we overrule the third assignment of error.
{¶ 13} In this case, however, we must sustain the fourth assignment of error because the trial court erred as a matter of law when it decided to reverse the magistrate's finding and to commit Pauley without giving Pauley the opportunity to present evidence in his defense. The record reveals that, immediately after Vasquez's testimony, the magistrate met with defense counsel and the assistant prosecuting attorney and told the prosecuting attorney that he was going to find that the state's evidence was insufficient to make a delinquency adjudication. The magistrate opined that Vasquez's testimony did not support the state's argument that Pauley had been an active participant in the theft of the beer trailer. Thus, the magistrate stated that Pauley's mere presence in the van was not enough to prove his guilt beyond a reasonable doubt.
{¶ 14} The magistrate then advised the state that it could call its next witnesses, who were police officers, but that it would not make a difference. Pauley's counsel then stated that he would not present any testimony on Pauley's behalf. The hearing resumed with the state calling police officer Wedig to testify.
{¶ 15} In this case, the record reveals that Pauley never had the opportunity to present any evidence in his defense. Although Pauley's counsel was prepared to present testimony from witnesses in his defense, Pauley's counsel was led to believe that such testimony was unnecessary, given that the magistrate had already opined that the state had not presented sufficient evidence for him to find Pauley guilty beyond a reasonable doubt. Under these circumstances, the trial court, at the very least, should have either recommitted Pauley's case to the magistrate so Pauley could have presented evidence on his behalf, or heard evidence from Pauley itself, prior to adjudicating Pauley delinquent. Because the trial court did not do so, we must sustain the fourth assignment of error.
{¶ 16} Our disposition of Pauley's fourth assignment of error moots the first assignment of error, in which Pauley argues that the decision of the juvenile court was against the manifest weight of the evidence.
{¶ 17} Therefore, we reverse the judgment of the juvenile court and remand this case for a new trial in accordance with this entry and the law.
{¶ 18} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Painter, P.J., Hildebrandt and Sundermann, JJ.
[1] See In re Washington, 75 Ohio St.3d 390, 392, 1996-Ohio-186,662 N.E.2d 346.
[2] See Juv.R. 40.
[3] See Juv.R. 40(E)(1).
[4] Normandy Place Assoc. v. Beyer (1982), 2 Ohio St.3d 102,443 N.E.2d 161, paragraph two of the syllabus; see, also, Hartt v.Munobe, 67 Ohio St.3d 3, 6, 1993-Ohio-177, 615 N.E.2d 617.
[5] Juv.R. 40(E)(4)(b).
[6] See Nolte v. Nolte (1978), 60 Ohio App.2d 227, 396 N.E.2d 807.
[7] See In re Callahan (Mar. 20, 1985), 1st Dist. Nos. C-840421 and C-840422.