JOURNAL ENTRY and OPINION.
 I. {¶ 1} Plaintiff-appellant 26901 Cannon Road LLC ("Cannon Road") appeals the trial court's order granting defendant/third-party plaintiff-appellee PSC Metals, Inc.'s ("PSC") motion for summary judgment. PSC had been negotiating with Cannon Road to enter into a lease agreement. PSC executed a "Letter of Intent" with its real estate agent King Associates ("KA"). Cannon Road contends that this letter formed a binding lease agreement and that the trial court erred in finding that the letter merely represented continued negotiations. Cannon Road contends that there exists a genuine issue of material fact whether the parties intended to be bound by the letter. We hold that there is a genuine issue of material fact and we therefore reverse and remand the decision of the trial court.
 II. {¶ 2} The relevant facts follow. PSC, whose lease with its landlord at 20521 Chagrin Boulevard was set to expire in June 2001, began to renegotiate the lease. PSC eventually hired KA as its real estate agent to negotiate on their behalf and to find PSC new space if necessary. KA began negotiating with, among others, Cannon Road on behalf of PSC. It turns out that KA also represented Cannon Road; that two of Cannon Road's owners are real estate agents at KA, Richard King, who is sole shareholder of KA, and Ken Marg; and that King and Marg also owned a company called KM Devco LLC, which had contracted with Cannon Road to manage the Cannon Road property. Richard Stineman, an employee of PSC who led the effort to secure a new lease, stated in his deposition that he became aware of King and Marg's ownership interest in Cannon Road around June or July of 2000. Stineman stated that he informed Doug McSorley, PSC's vice president of finance, about their ownership interest.
 {¶ 3} On February 23, 2001, Marg e-mailed Mike Stineman of PSC, which stated that "we have enclosed a letter of intent to be signed and executed by an authorized party at PSC." On February 27, 2001, PSC returned the letter to Richard King of KA. The letter reads:
 {¶ 4} "Dear Richard,
 {¶ 5} "In conjunction with and as a follow-up to our meetings, the following will apply.
 {¶ 6} "PSC intends to lease 18,600 square feet in the 26901 Cannon Road building, subject to a lease that is satisfactory to both parties, based on deal terms previously submitted to you.
 {¶ 7} "In order to accelerate the process we hereby authorize you to engage the [sic] architectural and legal services to finalize a lease and to draw up a set of plans and specifications based on our needs.
 {¶ 8} "We will hold you harmless from any costs for these plans and reimburse you for all monies spent on their development, if for some reason a lease is not consummated."
 {¶ 9} On February 28, 2001, Marg sent another e-mail to Stineman and explained that the term sheet (which includes the terms of the lease) that was to be e-mailed with Marg's February 21, 2001 e-mail might not have been delivered. Marg attached the term sheet to this e-mail.
 {¶ 10} Attorneys for PSC and Cannon Road continued to discuss terms of the proposed lease. PSC's current landlord then approached PSC with what PSC considered favorable terms. PSC and its existing landlord then renewed their lease agreement. PSC informed KA and offered to pay KA costs as spelled out in the letter of February 27, 2001. KA rejected the offer, maintaining that PSC had entered into a lease agreement with Cannon Road.
 {¶ 11} Cannon Road sued PSC seeking damages. The trial court eventually granted PSC's motion for summary judgment. Cannon Road brings this appeal with the following assignment of error:
 {¶ 12} "The Trial Court Abused Its Discretion and the Law Granting to Defendant Summary Judgment When There Existed Material Issues of Fact."
 III. A. 1. {¶ 13} Cannon Road argues that the trial court improperly assumed the role of factfinder when it decided that a final lease agreement had not been entered into. They rely on the Supreme Court's decision inNormandy Place Assoc. v. Bayer (1982), 2 Ohio St.3d 102, 105-106, in which the court held, "[w]hether the parties intended a contract remains a factual question, not a legal one, and as such is an issue to be resolved by the finder of fact." Cannon Road asserts that "suits based upon an agreement to lease will always involve an unsigned lease" and that an "incomplete lease merely raises the issues of fact as to whether the existing lease terms are sufficiently certain and whether the parties have sufficiently manifest an intent to be bound by these terms."
 2. {¶ 14} The broad question before us is whether the trial court properly granted PSC's motion for summary judgment. When confronted with a trial court's grant of a motion for summary judgment, this court reviews that grant de novo. "Summary judgments shall be rendered" if the evidence, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C). Here, a summary judgment will not be rendered unless, construing the evidence most strongly in favor of Cannon Road, "reasonable minds can come to but one conclusion and that conclusion is adverse" to Cannon Road. Id.
 {¶ 15} Thus, Cannon Road's argument that the trial court usurped the role of factfinder is not necessarily correct. If the trial court correctly found that there were no genuine issues of material fact, then the judge properly precluded the matter from going before a jury. In other words, if the evidence shows, in the absence of any genuine issue of material fact, that a lease agreement was not entered into, then the court properly entered an order granting PSC's motion for summary judgment.[1]
 3. {¶ 16} Therefore, the narrow issue for this court's review is whether a February 27, 2001 letter from PSC to KA constitutes an enforceable lease agreement between PSC and Cannon Road. Cannon Road describes this letter as a "Letter of Intent" and argues that PSC and Cannon Road intended thereby to be bound to a lease agreement. PSC counters that the letter merely represented PSC's intention to cover KA's legal and architectural costs associated with the lease negotiations.
 B. {¶ 17} Preliminary agreements to leases may be enforced. NormandyPlace. "The enforceability of [an agreement to make an agreement] depends * * * on whether the parties have manifested an intention to be bound by its terms and whether these intentions are sufficiently definite to be specifically enforced." Id. at 105-106. Therefore, we must decide whether, through this letter, (1) PSC and Cannon Road manifested an intention to be bound by its terms and (2) the intentions were sufficiently definite to be specially enforced. In making this determination, this court may look at the actions taken by the parties after the letter was signed. Arnold Palmer Golf Co. v. Fuqua Industries,Inc. (C.A.6, 1976), 541 F.2d 584, 588: "The decision whether the parties intended to enter a contract must be based upon an evaluation of the circumstances surrounding the parties' discussions. The introduction of extrinsic evidence does not violate the parole evidence rule because that rule applies only after an integrated or partially integrated agreement has been found."
 {¶ 18} Because the standard of review requires this court to construe the evidence in a light most favorable to Cannon Road and because the question of whether parties intended to be bound by the letter is almost always a question of fact, we hold that the trial court erred in granting summary judgment in favor of PSC.
 {¶ 19} The evidence, when construed most strongly in favor of Cannon Road, does not lead "reasonable minds * * * to but one conclusion[,]" which conclusion is "adverse" to Cannon Road. Civ.R. 56. The conflicting evidence follows.
 {¶ 20} The president of PSC signed the letter, which states that "PSC intends to lease 18,600 square feet in the 26901 Cannon Road building, subject to a lease that is satisfactory to both parties, basedon deal terms previously submitted to you." (Emphasis added.) There is evidence that attorneys for PSC and Cannon Road continued to negotiate portions of the lease after this letter was signed. What is not clear from the evidence, however, is whether those portions constituted essential terms of the lease such that the term sheet did not encompass a complete contract.
 {¶ 21} There is a March 14, 2001 e-mail from Marg to Cannon Road's attorney Hurtuk, on which Hurtuk wrote, "As of 3/14, substantial changes still being negotiated to many portions of the lease." (Emphasis sic.) This notation suggests that the letter of intent, signed in February, did not contain all the essential terms of the lease and that the negotiations after the letter of intent were meant to establish all the essential terms. However, in an interoffice memo faxed from Deborah Huston (PSC's attorney) to Stineman and McSorely on March 13, 2001, the subject line states "Proposed lease for [Cannon Road][.]" The memo continues, "Please review the lease, and my comments thereto, and makesure it comports with your understanding of the business deal. I also note that the rental rates are not included, nor is the addendum regarding the landlord's build-out. Lastly, I am waiting on Jim Boggs' comments to the environmental section of the lease. Please let me know your thoughts, and then I will submit these changes to the landlord's representatives." (Emphasis added.) This memo suggests that a "business deal" had been reached and that the negotiations concerned the wording of the terms and not the terms themselves.
 {¶ 22} Finally, PSC made a deal with Apple Business Interiors, Inc. to buy furniture for the Cannon Road property. Dale McIntosh, the owner of Apple, met with Stineman about supplying the furniture. When McIntosh went to pick up the deposit check from Stineman, Stineman told him that PSC's current landlord had just offered PSC a better deal and that PSC would not need the furniture from Apple.
 {¶ 23} Ultimately, construing the evidence most strongly in favor of Cannon Road, we hold that there remains a genuine issue of material fact, i.e., whether the parties intended to be bound by the letter of intent. PSC shows that the term sheet did not contain provisions regarding an indemnity agreement, waiver of subrogation, insurance, default, maintenance and repairs, and build out obligations. Cannon Road characterizes these missing terms as mere boilerplate provisions. The evidence shows unmistakably that PSC's main concern was to get a lease for around $300,000 a year. That PSC signed a letter of intent, which included the price term, and then contracted with Apple to buy furniture for its new property, suggests — but does not require — the conclusion that PSC understood the total cost of the deal when it signed the letter of intent. Testimony shows that PSC was willing to accept some higher rental rates per square foot so long as the total cost met their budget.
 {¶ 24} We acknowledge this court's holding in Joseph v. Doraty
(1957), 144 N.E.2d 111, that a deal was not entered into when "no agreement with respect to taxes, insurance, utilities * * *, rights of the parties in case of default, * * *, or extent of repairs required by both parties" was reached. The evidence here, however, does not show conclusively whether an agreement with respect to these terms was reached.
 {¶ 25} Extrinsic evidence that PSC intended to be bound to the terms of the lease could lead a reasonable mind to the conclusion that PSC intended to be bound by the letter of intent. We are therefore unable to hold that no genuine issue of material fact exists and that reasonable minds could come to but one conclusion, i.e., that PSC and Cannon Road manifested an intention to be bound by its terms and that (2) the intentions were sufficiently definite to be specially enforced.
 C. {¶ 26} PSC brings a cross-appeal in which it argues, that should this court find that the letter constitutes an enforceable contract, this court should nonetheless hold that the contract is unenforceable as against public policy. PSC argues that the failure of KA to disclose its agency relationships with both Cannon Road and KM Devco LLC is a violation of public policy and is a basis for voiding the contract.
 {¶ 27} As the trial court found, PSC was well aware of the conflict of interest long before the letter of intent was signed. PSC essentially waived its right to claim that the lack of a written notification prejudiced their ability to get a satisfactory lease.
 {¶ 28} Finally, that KA was acting in a dual-agency capacity renders PSC's argument, that Cannon Road was not a party to the letter of intent, unpersuasive. PSC knew that KA was working in a dual-agency capacity. As the agent of Cannon Road, KA was authorized to enter into binding agreements on Cannon Road's behalf. The question whether PSC and Cannon Road intended to be bound by the letter of intent is left for the trier of fact.
 III. {¶ 29} We therefore reverse the trial court's grant of PSC's motion for summary judgment. We hold that, construing the evidence in a light most favorable to Cannon Road, reasonable minds could not come to one conclusion. We therefore remand this matter to the trial court for proceedings consistent with this opinion.
Judgment reversed and remanded.
This cause is reversed and remanded for proceedings consistent with this opinion.
Costs assessed against defendant/third-party plaintiff-appellee PSC Metals, Inc.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, J., and COLLEEN CONWAY COONEY, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R.22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] See, e.g., Snell Environmental Group v. Bd. of Comm. (Aug. 3, 1983), Warren App. No. 64 ("This Court does not agree that there was a genuine issue as to a material fact. Appellant did not and has not set forth specific facts showing that there was a genuine issue as to a material fact. There were no factual disputes and no disputes regarding the terms of the document. The real issue was the legal consequences of not specifying the compensation or the legal consequence of what was, in essence, an agreement to agree at a future date on the fee to be paid.")