OPINION
{¶ 1} Appellant Craig Slifko appeals the decision of the Court of Common Pleas, Guernsey County, which granted a divorce between him and Appellee Kathleen Conder-Slifko. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant and appellee were married in 1996. They have one child of the marriage, Molly, born in 1997. On February 24, 2003, appellee filed a complaint for divorce. Appellant filed an answer and counterclaim on April 17, 2003.
 {¶ 3} The parties worked out a shared parenting plan and resolved many of the marital property and debt issues prior to trial. The case came on for final hearing before a magistrate on March 18, 2004. Appellant thereafter filed an objection to the decision of the magistrate on the issues of child support deviation, the award of appellee's credit union account, and the award of a horse trailer to appellee. The court overruled the objections and adopted the magistrate's decision.
 {¶ 4} Appellant timely filed a notice of appeal, and herein raises the following three Assignments of Error:
 {¶ 5} "I. When the parties enter into a shared parenting plan that provides for an equal amount of parenting time the best interests of the child are served by applying a Weinberger-Type offset to establish what child support, if any, should be paid.
 {¶ 6} "II. The trial court's division of the credit union and vacation accounts was against the manifest weight of the evidence and was inequitable because it did not divide those assets equally.
 {¶ 7} "III. Failure to conduct a supplemental hearing, pursuant to appellant's timely objection, was error when it resulted in the court changing the terms of a mediated property settlement agreement."
 I. {¶ 8} In his First Assignment of Error, appellant contends the trial court abused its discretion in setting child support under the shared parenting plan. We disagree.
 {¶ 9} Child support in shared parenting situations is addressed in R.C. 3119.24(A), which states as follows:
 {¶ 10} "(A)(1) A court that issues a shared parenting order in accordance with section 3109.04 of the Revised Code shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in section 3119.022 of the Revised Code, through the line establishing the actual annual obligation, except that, if that amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount.
 {¶ 11} "(2) The court shall consider extraordinary circumstances and other factors or criteria if it deviates from the amount described in division (A)(1) of this section and shall enter in the journal the amount described in division (A)(1) of this section its determination that the amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting its determination."
 {¶ 12} We have previously held that under Ohio's statutory scheme, a trial court maintains the discretion whether to accommodate the best interests of children under shared parenting plans by applying either aWeinberger-type offset formula[1] or rendering a support order using the "calculation with deviations" method. Walker v. Walker, Delaware App. No. 02CAF04019, 2002-Ohio-5293, ¶ 29-30, citing French v. Burkhart
(May 22, 2000), Delaware App. No. 99CAF07038. Weinberger has not been expressly rejected in Ohio, but as we discussed in Musselman v.Musselman (Nov. 20, 2001), Muskingum App. No. CT2001-0006, its ongoing reliability in regard to "offsetting" child support obligations for shared parenting orders is questionable following the Ohio Supreme Court's decision in Hubin v. Hubin (2001), 92 Ohio St.3d 240. See, also,Tonti v. Tonti, Franklin App. Nos. 03AP-494, 03AP-728, 2004-Ohio-2529, ¶ 80.
 {¶ 13} In the case sub judice, the court applied a downward deviation from the guidelines of approximately twenty percent to arrive at a child support figure of $436.19 per month. Appellant challenges the court's figure as arbitrary, and proposes an amount of $166.87 per month under aWeinberger formula. We nonetheless note the magistrate considered the factors under R.C. 3119.23, and concluded (1) that appellant had 163 parenting days versus the local standard of 92 days, (R.C. 3119.23(D)); (2) that appellant makes approximately $7,000 more than appellee, as well as additional unreported cash income (R.C. 3119.23(G)); (3) that based on the shared parenting plan, it would be assumed that the only increase in in-kind contributions by appellant would be more meals provided by appellant (R.C. 3119.23(J)); and (4) that appellee has another child in her home for whom she receives child support (R.C. 3119.23(O)).
 {¶ 14} Based upon our review of the record and the pertinent statutory factors, we are unpersuaded the trial court abused its discretion in setting child support under the shared parenting order and in implicitly declining to utilize a Weinberger offset.
 {¶ 15} Accordingly, appellant's First Assignment of Error is overruled.
 II. {¶ 16} In his Second Assignment of Error, appellant argues the trial court's division of the two main bank accounts was inequitable and against the manifest weight of the evidence. We disagree.
 {¶ 17} The thrust of appellant's argument relates to the court's decision to award appellee a credit union account, versus the award to appellant of a "vacation account" of a much lesser value. The magistrate concluded, and appellant does not presently dispute, that as of the date of the complaint for divorce, $18, 719.12 of the credit union account was marital property. The entire credit union account was nonetheless awarded to appellee.[2] In contrast, appellant asserts the "vacation account" at National City Bank, which he was awarded, was only worth approximately $500, at least as of the date of the magistrate's hearing.
 {¶ 18} An appellate court generally reviews the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. Cherry v. Cherry
(1981), 66 Ohio St.2d 348, 421 N.E.2d 1293. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140.
 {¶ 19} R.C. 3105.171 explains a trial court's obligation when dividing marital property in divorce proceedings as follows: "(C)(1) Except as provided in this division or division (E)(1) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section." See also Cherry, supra, at 355, 421 N.E.2d 1293.
 {¶ 20} As an appellate court, we generally review a trial court's property division in its entirety, rather than examining individual awards in a piece-meal fashion. Espenschied v. Espenschied, Tuscarawas App. No. 2002AP030021, 2002-Ohio-5119, ¶ 19, citing Briganti v. Briganti (1984),9 Ohio St.3d 220, 222, 459 N.E.2d 896. However, in the case sub judice, all asset division issues were resolved prior to trial, save the distribution of appellee's credit union account and appellant's "vacation" account. The magistrate found that appellee's credit union account had a balance of $20, 216.99 as of the date of the marriage. The magistrate further found that $200 deposits were made bi-weekly into the account throughout the marriage. In 2000, the sum of $20,000 was withdrawn for a down payment on the parties' marital residence. In contrast, the magistrate concluded as follows regarding appellant's account:
 {¶ 21} "The Magistrate finds that husband had an existing Vacation Account in which money was direct deposited each week from his payroll check during the course of the marriage. The Magistrate further finds that husband failed to disclose the Vacation Account in response to interrogatories requested by Wife's Counsel. Neither was Husband forthcoming with bank records when requested. Bank records were only obtained after the Magistrate delayed the hearing this a.m. so that Husband could go to the bank for a copy. The hearing was further delayed when Husband returned without sufficient documentation. Defendant's Exhibit 2 3 were then obtained after Counsel for Husband returned to the bank with Husband to obtain the records. However, a review of those records shows that they only go back to June, 2000. Testimony established that Husband had a "vacation account" throughout the marriage.
 {¶ 22} "The Magistrate finds that Husband has committed financial misconduct by attempting to conceal this asset and by failing to fully disclose the asset when it was brought to the attention of both counsel and this court. Defendant's Ex 5, the only payroll stub that Husband provided, shows $108 was deposited to the vacation account. He was paid weekly. Therefore, the Magistrate finds that the balance of Husband's vacation account is equal to the Wife's Credit Union Account as they deposited nearly the same amount per month from their payroll checks into these separate accounts during the duration for the marriage. (Husband at $108 weekly; Wife at $200 biweekly.)" Magistrate's Decision at para. 18 and 19.
 {¶ 23} R.C. 3105.171(E)(3) states that "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." Upon review of the record, we do not find the trial court abused its discretion in dividing the parties' marital property. See, also, Koegel v. Koegel (1982), 69 Ohio St.2d 355,432 N.E.2d 206 (emphasizing that a trial judge should be given wide latitude in dividing property between the parties).
 {¶ 24} Accordingly, appellant's Second Assignment of Error is overruled.
 III. {¶ 25} In his Third Assignment of Error, appellant maintains the trial court erred in failing to conduct a supplemental hearing upon appellant's objection to the magistrate's decision, particularly as to the award of the horse trailer and "its associated debt." We disagree.
 {¶ 26} Civ.R. 53(E)(4)(b) specifies that upon objection to the magistrate's decision, "[t]he court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter." Thus, the court has discretion to decide whether to hear additional evidence after the parties submit objections to the magistrate's decision. Wallace v. Taylor
(April 16, 2001) Licking App. No. 00CA71, citing Normandy Place Assoc.v. Beyer (1982), 2 Ohio St.3d 102, 105. The second sentence of Civ.R. 53(E)(4)(b) states that "[t]he court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration." (Emphasis added).
 {¶ 27} In the case sub judice, appellant made no significant attempt to proffer or demonstrate that he could not have produced the necessary promissory notes regarding the horse trailer at issue. Furthermore, appellant admitted, and the magistrate found, that appellant had responded to appellee's interrogatories by claiming that the National City bank debt was for his truck and boat, not the horse trailer. At trial, he attempted to change his answers, which the magistrate found not credible. Magistrate's Decision at para. 20. The magistrate's hearing further provided testimony that the trailer was a gift to appellee for her fortieth birthday. Tr. at 112-113.
 {¶ 28} We therefore find no error or abuse of discretion in the trial court's handling of the objection to the magistrate's decision. Appellant's Third Assignment of Error is overruled.
 {¶ 29} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Guernsey County, Ohio, is hereby affirmed.
Wise, J., Farmer, P.J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Guernsey County, Ohio, is affirmed.
Costs to appellant.
[1] See Weinberger v. Weinberger (May 15, 1998), Hamilton App. No. C-970552.
[2] The magistrate also recognized $216.99 of the credit union account remained as appellee's premarital asset.