[Cite as *Testa Ent. v. Hudson*, 2026-Ohio-1950.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| TESTA ENTERPRISES, INC. | C.A. No.    31498 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CITY OF HUDSON, et al. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellees | CASE No.    CV-2023-04-1190 |

DECISION AND JOURNAL ENTRY

Dated: May 27, 2026

---

HENSAL, Judge.

{¶1}    Testa Enterprises ("Testa") appeals an order that granted summary judgment to the City of Hudson.  This Court reverses.

I.

{¶2}    On September 16, 2016, the Hudson City Council passed a resolution that authorized the city manager to enter into a "letter of intent" with Testa "for the purpose of conducting a public engagement process and developing conceptual plans for the development of Phase II" of the city's downtown retail area.  The city manager and a Testa representative signed a "Memorandum of Understanding" on January 3, 2017, that memorialized their "desire to work toward a definitive development agreement . . . ."  The memorandum of understanding contained a termination clause that read:

> The parties agree that the development agreement to be executed must have a termination procedure addressing what happens if Testa does not meet the benchmarks referenced above.  Similarly, the development agreement must have a termination procedure which addresses what happens if some or all of the Project

is deemed not to be financially or otherwise feasible. In the event the public engagement/feasibility study reveals that some or all of the Project is not feasible before the development agreement is finalized, the parties will, in good faith, negotiate a commercially reasonable termination of this MOU.

Three years into the process, however, a ballot issue addressing the redevelopment plans was rejected by voters. The parties started to move forward with a modified proposal but, when changes to city council occurred after the November 2019 election, Hudson abandoned the project altogether.

{¶3} Testa filed a complaint against Hudson, alleging that the memorandum of understanding was a binding contract that Hudson breached by negotiating in bad faith and by unilaterally terminating the agreement without negotiating a commercially reasonable termination. Testa also requested declaratory judgments that Hudson has breached and failed to negotiate in good faith as required by the memorandum of understanding, that the memorandum of understanding did not require endorsement by the City Solicitor or a certification of available funds under Revised Code Section 5705.41(D)(1), and that the memorandum of understanding required Hudson and Testa to negotiate a commercially reasonable termination in good faith. In the alternative, Testa petitioned the trial court for a writ of mandamus compelling the city solicitor and finance director to endorse the memorandum of understanding.

{¶4} Hudson moved for summary judgment, arguing that the memorandum of understanding was unenforceable because it was an indefinite, preliminary step toward a final agreement that had yet to be negotiated. With respect to the termination language, Hudson maintained that "Hudson and Testa . . . merely indicated a willingness to discuss how to move forward or how to reasonably terminate the MOU if the need ever arose." Testa responded with a different argument: that regardless of whether the MOU itself was enforceable as a contract, the termination provision that it contained stood alone as an enforceable agreement. The trial court

granted summary judgment to Hudson, and Testa appealed, assigning one error for this Court's review.

I.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT TESTA ENTERPRISES, INC. BY GRANTING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT-APPELLANT CITY OF HUDSON.

{¶5} Testa's assignment of error argues that the trial court erred by granting summary judgment to Hudson because the termination clause in the memorandum of understanding was an enforceable agreement to negotiate and the language in the termination clause was sufficiently definite to be enforced on its own. Testa also argues that the trial court erred by failing to consider extrinsic evidence that demonstrated the parties' intentions. This Court agrees in part.

{¶6} This Court reviews an order granting summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Under Civil Rule 56(C), "[s]ummary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law." *Byrd v. Smith*, 2006-Ohio-3455, ¶ 10. Likewise, this Court reviews legal determinations in a declaratory judgment de novo. *See Arnott v. Arnott*, 2012-Ohio-3208, ¶ 14, 17; *Martin v. Steiner*, 2018-Ohio-3928, ¶ 10 (9th Dist.).

{¶7} Testa argues, in part, that the trial court erred by failing consider extrinsic evidence of the parties' intent to the extent that the trial court found that the termination clause was ambiguous. Specifically, Testa argues that "this evidence establishes that [Hudson] and Testa understood that cost reimbursement was the ultimate goal of negotiating a 'commercially

reasonable termination,'" and as a result, the trial court "erred by finding that the Termination Clause was not enforceable as a binding agreement to negotiate."

{¶8}    Agreements to agree are not per se unenforceable.  *Normandy Place Assocs. v. Beyer*, 2 Ohio St.3d 102, 105 (1982).  Instead, "[t]he enforceability of such an agreement depends rather on whether the parties have manifested an intention to be bound by its terms and whether these intentions are sufficiently definite to be specifically enforced."  *Id*. at 105-106.  Where "the express terms" of an agreement to agree "clearly indicate that that document [is] nothing more than an agreement to principles which were subject to further negotiation and a detailed and definitive . . . agreement," an agreement to agree is not an enforceable contract.  *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St.3d 497, 503 (1994).  A contract must address "all essential terms" and not merely set forth "the basic framework for future negotiations."  *Id*.  "[W]hen a document unambiguously expresses the parties' manifest intent to not be bound by its terms until the agreement is formalized at some future date, a contract does not exist."  *Padula v. Wagner*, 2015-Ohio-2374, ¶ 18 (9th Dist.).  In considering whether the parties intended to be bound, however, a court must look not only to the language of the purported contract but to "the actions of the parties . . . ."  *Oglebay Norton Co. v. Amco, Inc.*, 52 Ohio St.3d 232, 236 (1990), quoting Restatement of the Law 2d, Contracts, § 33, Comment a, at 92 (1981).  The question of whether parties intended to be bound by a contract is a question of fact.  *Beyer* at 106.

{¶9}    The trial court recognized that "'agreements to agree' are not categorically unenforceable" and noted that "[s]uch an agreement might be enforced where 'the parties have manifested an intention to be bound by its terms and . . . these intentions are sufficiently definite to be specifically enforced.'"  In turning to the memorandum of understanding, however, the trial court focused exclusively on the language of the termination clause.  The trial court characterized

the language of the termination clause as "plain and unambiguous" and concluded that the clause itself was "not enforceable as the parties' definite, final agreement *regarding termination of the [memorandum of understanding]*." (Emphasis added.). To the extent that the trial court considered the language of the memorandum of understanding in its entirety, it did so only to attempt to interpret the language of the termination clause.

{¶10} Focusing solely on the termination clause, the trial court concluded that it was both "plain and unambiguous" yet "capacious." It is not clear whether the trial court concluded – as Hudson maintained in its motion for summary judgment – that the memorandum of understanding *as a whole* was not a contract. Fundamentally, however, the question in this case did not relate to contract interpretation but to the question of whether a contract existed in the first place. It was therefore incumbent upon the trial court to consider whether the memorandum of understanding as a whole unambiguously expressed the parties' intention not to be bound by it and, if not, whether the parties' actions demonstrated that they intended the memorandum of understanding to constitute a contract. *See Oglebay Norton* at 236-237.

{¶11} To the extent that the trial court failed to undertake this analysis and, if appropriate, to consider evidence outside the record to determine the parties' intentions, this Court agrees with Testa's assignment of error. Because the trial court has not yet undertaken this analysis, this Court takes no position at this time about whether the language of the memorandum of understanding as a whole unambiguously expresses the parties' intentions or, if not, whether evidence from outside the four corners of the document demonstrates their intention to be bound. Testa's assignment of error is therefore sustained in part, and the remaining arguments set forth in its assignment of error are premature.

III.

**{¶12}** Testa's assignment of error is sustained in part. The judgment of the Summit County Court of Common Pleas is reversed, and this matter is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

JENNIFER HENSAL
FOR THE COURT

SUTTON, J.
CONCURS.

CARR, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶13} I agree that this matter must be remanded to the trial court; however, I do not agree with the majority's basis for doing so. The majority believes it is necessary for the trial court to examine the entirety of the contract instead of the termination clause at issue, even though this issue was not precisely raised by the parties. I, however, would conclude that the trial court conducted the proper analysis, but just reached an incorrect result.

{¶14} I would conclude that the trial court erred in granting summary judgment to Hudson, as the termination clause was a binding agreement to negotiate. The intentions of the parties were clear, and the terms of the termination clause were sufficiently definite to be enforceable. *See Normandy Places Assocs. v. Beyer*, 2 Ohio St.3d 102, 105-106 (1982).

{¶15} In addition, I would remand the matter to the trial court for it to consider the arguments related to the city solicitor endorsement and city finance director certification. The trial court previously found that these issues were moot in light of its conclusion that the termination clause was unenforceable; however, as that determination was erroneous, these issues are properly first reviewed by the trial court.

APPEARANCES:

ROBERT A. HAGER, DANIEL J. RUDARY, and SUSAN A. JACOBSEN, Attorneys at Law, for Appellant.

MARSHAL M. PITCHFORD, J. REID YODER, and SETH A. MARCUM, Attorney at Law, for Appellees.