OPINION
{¶ 1} Plaintiff-appellant Fairfax Homes, Inc. appeals the October 7, 2005 Judgment Entry of the Licking County Court of Common Pleas, approving and adopting a May 17, 2005 Magistrate's Decision in favor of defendants-appellees Blue Belle, Inc. and David Sellers.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 1, 1998, the parties herein entered into a contact for plaintiff-appellant Fairfax Homes, Inc. (hereinafter "Fairfax"), a developer, to develop single-family homes on land owned by defendant-appellee Blue Belle, Inc. (hereinafter "Blue Belle"). Defendant-appellee David Sellers is President of Blue Belle, Inc.
 {¶ 3} On June 10, 1999, the parties entered into a subsequent contract relative to Phase IV of the subdivision. The contract provided for the sale of lots in Phase IV for the sum of $48,500.00 each, and stated:
 {¶ 4} "(C)ontingent upon Buyer of property qualifying for financing. Buyer to receive a 3% excavation credit at closing. Terms to be the same as in Phases I, II, III, of contract and addendum to purchase the first three phases of the Fairmount Subdivision contract dated July 1, 1998, minimum of 10 lots to be sold in Phase IV."
 {¶ 5} An addendum was executed on February 4, 2000, stating prior addendums dated July 1, 1998, and June 1, 1999, were null and void. The addendum also stated it was to be attached to and made a part of the July 1, 1998 contract, and addressed the purchase of lots in Phases I, II, III. The 1999 contract provided the transaction shall be closed on or before "TBD."
 {¶ 6} The parties completed their transactions with regard to Phases I, II and III. The instant action relates only to Phase IV.
 {¶ 7} After the 1999 contract was executed, it was discovered the land in Phase IV involved a wetland area at the eastern end of Blue Belle's property, and the initial plan for Phase IV had to be revised to 8 lots instead of 10. The EPA required the lot sizes be larger due to the wetland area; 2.5 acres compared to 2 acres.
 {¶ 8} Fairfax indicated dissatisfaction with the number of lots, and Blue Belle withdrew the application for the Phase IV plat from the Licking County Planning Commission, and discussed with the Planning Commission a way to maintain the 10 lots addressed by the 1999 contract. The Planning Commission informed Blue Belle the lots in Phase IV had to be contiguous, and Blue Belle proceeded to have the plan redrawn, selecting a site to the west of the original location. The final plat approved by the Licking County Planning Commission provides for 10 lots with 2.5 acre minimum lot sizes.
 {¶ 9} The EPA eventually reversed its mandate for the 2.5 acre minimum lot size, reverting to the 2 acre minimum. However, appellees maintained it was too late to replat and re-engineer Phase IV.
 {¶ 10} Fairfax initiated this action for breach of contract and fraud when Blue Belle refused to sell Fairfax the 10 lots newly platted in Phase IV. Appellees counterclaimed alleging unjust enrichment, irreparable damage if the contract is enforced and willful or negligent disposal of construction debris.
 {¶ 11} Following a trial to the magistrate, the magistrate, via Magistrate's Decision, issued findings of fact and conclusions of law on May 17, 2005, finding:
 {¶ 12} "The contract between the parties is uncertain as to the identity of any particular lots and the location of lots to be purchased. The contract is uncertain as to the location of Phase IV as whole.
 {¶ 13} "The contract is uncertain as to closing date and the timing of the purchase of the various lots.
 {¶ 14} "When the terms of a contract are so indefinite that the specific lots to be sold are not identified and the location of said lots cannot be placed, the Statue of Frauds, as codified in Section 1335.05 of the Ohio Revised Code, precludes specific performance. See Schmidt v. Weston (1948), 150 Ohio St. 293;Steeg v. Scharenberg (1969), 20 Ohio App. 2d 151.
 {¶ 15} "* * *
 {¶ 16} "The contract does not meet the tests of contractual certainty and is unenforceable.
 {¶ 17} "Defendants did not breach any contract with plaintiff.
 {¶ 18} "Since the contract cannot be enforced, the complaint is dismissed.
 {¶ 19} "Inasmuch as Claims One through Four of Defendants' Counterclaim seek declaratory judgment that the contract is unenforceable, the above determination alleviates the Court from examining the merits of said claims."
 {¶ 20} On August 19, 2005, Fairfax filed objections to the Magistrate's Decision. On September 2, 2005, appellees filed a reply to the objections. On October 7, 2005, the trial court, via Judgment Entry, found appellant's objections not meritorious, approving and adopting the May 17, 2005 Magistrate's Decision.
 {¶ 21} Appellant Fairfax now appeals, assigning as error:
 {¶ 22} "I. THE TRIAL COURT ERRED IN ADOPTING THE MAGISTRATE'S DECISION DISMISSING THE COMPLAINT ON THE BASIS THAT THE CONTRACT BETWEEN FAIRFAX AND BLUE BELLE CANNOT BE ENFORCED BECAUSE OF AN INADEQUATE DESCRIPTION OF THE SUBJECT OF THE CONTRACT AND THE LACK OF A CLOSING DATE."
 I {¶ 23} Specifically, Fairfax argues the June 1999 contract contains terms definite and explicit enough to permit a court to enforce the contract. As set forth above, the May 17, 2005 Magistrate Decision, adopted and approved by the trial court, finds the contract uncertain as to the identity of any particular lots and the location of lots to be purchased. The decision states the contract is uncertain as to the location of Phase IV as whole. Further, the magistrate finds the contract uncertain as to a closing date and the timing of the purchase of the various lots. The decision concludes the contract does not meet the tests of contractual certainty and is unenforceable.
 {¶ 24} Initially, we note our standard of review is de novo because the issue presented at this time involves analysis of a contract.
 {¶ 25} Ohio Revised Code Section 1335 requires the transfer or creation of an interest in real estate be in writing. Section1335.05 provides:
 {¶ 26} "No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person; nor to charge an executor or administrator upon a special promise to answer damages out of his own estate; nor to charge a person upon an agreement made upon consideration of marriage, or upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them, or upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."
 {¶ 27} To satisfy the statute, a writing must (1) identify the subject matter of the contract, (2) establish the contract has been made, and (3) state the essential terms of the contract with reasonable certainty. North Coast Cookies v. SweetTemptations (1984), 16 Ohio App.3d 342.
 {¶ 28} Because the statute of frauds only requires the memorandum contain the essential terms of the agreement, it need not contain all the terms of the agreement. N. Coast Cookies at 349, 476 N.E.2d 388. This is similar to the more general rule that parties cannot enter into an enforceable contract unless they come to a meeting of the minds on the essential terms of the contract. See Alligood v. Procter Gamble Co. (1991),72 Ohio App.3d 309, 311, 594 N.E.2d 668. In those cases, courts have identified the essential terms of a contract as "the identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term, and a price term." Id.
 {¶ 29} A review of the contract at issue demonstrates the premises are described as "Phase IV Fairmont Subdivision as recorded in Licking County" The terms of the contract are to "be the same as in phases I, II III, of contract adendum [sic.] to purchase the 1st 3 phases of the Fairmont subdivision contract dated July 01, 1998, minimum of 10 lots to be sold in Phase 4"
 {¶ 30} The Ohio Supreme Court has held,
 {¶ 31} "There can be no dispute upon the proposition that the memorandum must contain a description of the property. However, we are not prepared to hold that the property must be described with the particularity used in a deed or a formal contract. To so hold would render nugatory the provision of the statute that `unless the agreement upon which such action is brought, or somememorandum or note thereof, is in writing, and signed by the party to be charged therewith.'" Sanders v. McNutt (1947),147 Ohio St. 408.
 {¶ 32} Rather, the statute of frauds requires only the signed memorandum point out the particular land to be conveyed. Schmidtv. Weston (1948), 150 Ohio St. 293. In Schmidt, the Ohio Supreme Court held "the description must be in itself capable of application to something definite before parole testimony can be admitted."
 {¶ 33} In the case sub judice the contract's description of the land as ten buildable lots in the platted Fairmont subdivision in Licking County is definite and sufficient enough to be applied without more information, and renders the contract enforceable. The written document clearly identifies the parties to the contract, identifies the subject of the contract (Land in Phase IV), states the quantity of land being sold (Ten buildable lots), and states the price ($48,500.00/lot). These are the essential elements of this agreement. The closing date and timing of purchase of the various lots can be determined through business practices of reasonable time and the past practices between the parties with respect to the earlier phases of development.
 {¶ 34} Accordingly, we sustain appellant's sole assignment of error.
 {¶ 35} Further, upon review of the record, we note appellees raised the affirmative defenses of mutual mistake, inability to perform and impossibility in their December 5, 2003 answer to appellant's complaint. The magistrate did not consider the defenses; rather, the decision is limited to the unenforceability of the contract due to lack of specific terms. Based upon our disposition of appellant's sole assignment of error, we reverse the October 7, 2005 Judgment Entry of the Licking County Court of Common Pleas, and remand this matter to the trial court for further proceedings to consider whether appellee established the affirmative defenses raised.
Hoffman, J. Gwin, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, we reverse the October 7, 2005 Judgment Entry of the Licking County Court of Common Pleas, and remand this matter to the trial court for further proceedings in accordance with the law and our opinion. Costs to appellee.