[Cite as *Mezher v. Schrand*, 2018-Ohio-3787.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| MIKE MEZHER, | : | APPEAL NO. C-180071 |
| and | : | TRIAL NO. A-1705484 |
| JOSEPH MEZHER, | : | |
| Plaintiffs-Appellants, | : | *O P I N I O N.* |
| vs. | : | |
| JEFF SCHRAND, | : | |
| and | : | |
| KARRI SCHRAND, | : | |
| Defendants-Appellees. | : | |


Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  September 21, 2018


*Kathleen Mezher & Associates* and *Kathleen D. Mezher,* for Plaintiffs-Appellants,

*Graydon Head & Ritchey, LLP,* and *Michael A. Roberts*, for Defendants-Appellees.

DETERS, Judge.

{¶1}   This is a dispute over the sale of a high-end residential property in Mt. Adams owned by defendants-appellees Karri and Jeff Schrand.  Plaintiffs-appellants Joseph and Mike Mezher contend that the Schrands agreed by email to sell their home to Mike Mezher and that the Schrands breached that agreement.  The Schrands argue that no agreement existed because of the requirements of the statute of frauds.  For the reasons set forth below, we hold that a question of fact exists as to whether the parties intended to be bound by the email exchange.  Therefore, we reverse the trial court's judgment in favor of the Schrands, and we remand the cause for further proceedings.

## Background

{¶2}   Joseph Mezher owns property at 1140 Fort View Place.  In 2016, Joseph Mezher sought and received a building permit from the city of Cincinnati to build a new home on his property.  The Schrands bought the property next door to Joseph Mezher in July 2017.  Joseph Mezher's father, Mike Mezher, spoke with the Schrands regarding the new-home construction plans, and he proposed renting a sidewalk on the Schrands' property to aid in the construction.  The Schrands responded by offering to sell their property to Mike Mezher.  Mike Mezher negotiated with the Schrands through email about purchasing the property.

{¶3}   On September 29, 2017, Karri Schrand sent an email to Mike Mezher, stating, "Mike:  We would like to wrap this up if there is still a conversation going regarding your potential purchase of our home.  As you are aware your offer of $960,000 was way too low.  We are countering with $1,000,000.  We would appreciate a quick response.  Karri and Jeff Schrand."   Mike responded, "Hi Karrie

2

[sic], The max that I can do is $980,000 as Cash closing with inspection contingency. (split the difference between us and call it a day). Let me know. Thanks, Mike." Ms. Schrand responded, "Mike we have an agreement if we are at $985,000." Mike responded: "I starched [sic] the amount it to go [sic] to 980K. However, will split it again with you because I want to be flexible. I am good at $982,500 for a purchase price Based on inception [sic] and customary closing. we can get a simple contract drafted Monday and have it signed by us Tuesday with the earnest money cashier check to you upon acceptance of contract by Tuesday. Please let me know, Mike[.]" The next morning, Ms. Schrand responded to Mike, "We accept." Mike responded, in part, "Great, I agree too. Do you have some one [sic] to draw a simple contract (neutral contract). I am willing to do one if you like."

{¶4} The parties further discussed drafting a formal document, as well as inspection and closing timing, and earnest money. On October 5, Mike Mezher, his wife, and the home builder for his son's property next door went to the Schrands' home. At this meeting, Mike Mezher gave Ms. Schrand a document titled "Contract to Purchase Real Estate." Christine Mezher signed the document as the buyer. The document stated that "[t]his offer expires Monday October 9, 2017 at 4:00 p.m. if not signed by the Buyer and Sellers." The parties have differing accounts as to exactly what happened at this October 5 meeting, but both parties agree that an argument ensued and Ms. Schrand asked the group to leave the home. The Schrands never signed the document.

{¶5} Mike and Joseph Mezher filed a complaint against Jeff and Karri Schrand, requesting specific performance of the real estate contract, a preliminary injunction, and pecuniary and punitive damages. The Schrands filed an answer,

3

asserting that no agreement had been reached, because the parties had merely been negotiating a potential purchase via email. The Schrands also filed a counterclaim for a declaratory judgment.

{¶6} The Schrands filed a summary-judgment motion, arguing that no contract existed because the Schrands never signed the October 5 document, that any email "agreement" was barred by the statute of frauds, and that no meeting of the minds occurred. The Mezhers also filed a motion for partial summary judgment with respect to their claim for specific performance. The Mezhers argued that the September 29-30 email exchange constituted a contract and satisfied the statute of frauds. The trial court granted summary judgment in favor of the Schrands, finding that the September 29-30 email exchange between the parties did not satisfy the statute of frauds, because the emails did not describe the subject property with particularity. The Mezhers have appealed.

### Standard of Review

{¶7} In two assignments of error, the Mezhers argue that the trial court erred in granting the Schrands' motion for summary judgment, and the trial court should have ruled in favor of the Mezhers on their motion for summary judgment. We apply a de novo review of a trial court's decision under Civ.R. 56(C). *First Fin. Bank, N.A. v. Cooper*, 2016-Ohio-3523, 67 N.E.3d 140, ¶ 9 (1st Dist.). Summary judgment is proper only where no genuine issues of material fact remain, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party. Civ.R. 56(C).

### *Statute of Frauds*

{¶8}   Ohio's statute of frauds with respect to the sale of land, R.C. 1335.05, provides in relevant part: "No action shall be brought whereby to charge the defendant * * * upon a contract or sale of lands * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith * * *." A writing satisfies the statute of frauds if it (1) identifies the subject matter, (2) establishes that a contract has been made, and (3) states the essential terms with reasonable certainty. *LHPT Columbus, L.L.C. v. Capitol City Cardiology, Inc.*, 2014-Ohio-5247, 24 N.E.3d 712, ¶ 22 (10th Dist.). As to essential terms, the essential terms of a contract are "the identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term, and a price term." *Alligood v. Procter & Gamble Co.*, 72 Ohio App.3d 309, 311, 594 N.E.2d 668 (1st Dist.1991). "Because the statute of frauds only requires the memorandum contain the essential terms of the agreement, it need not contain all the terms of the agreement." *Fairfax Homes, Inc. v. Blue Belle, Inc.*, 5th Dist. Licking No. 05-CA-110, 2006-Ohio-2261, ¶ 28. Therefore, a contract to transfer land does not violate the statute of frauds because it fails to provide, for example, a closing date. *Id.*; *McGee v. Tobin*, 7th Dist. Mahoning No. 04 MA 98, 2005-Ohio-2119, ¶ 25.

{¶9}   The trial court granted summary judgment to the Schrands on the basis that the September 29-30 email exchange regarding the sale of the property did not satisfy the statute of frauds, because the property subject to the purported agreement was not described with enough particularity. We disagree, and the Schrands concede that this specific argument was not advanced to the trial court. Nevertheless, the Schrands contend that the trial court's decision should be affirmed

5

on a different basis. *See State ex rel. Carter v. Schotten*, 70 Ohio St.3d 89, 92, 637 N.E.2d 306 (1994) (a reviewing court cannot reverse a correct judgment on the sole basis that the trial court provided erroneous reasons to support its judgment).

{¶10} In their motion for summary judgment, the Schrands rely on the terms of the October 5 document to argue that the September 29-30 email exchange failed to contain the essential terms of the agreement, such as the identity of the buyer, sale of items within the home, such as appliances and chandeliers, and the scope of the home inspection. However, as the Mezhers argue, the email exchange identified the sellers as Karri and Jeff Schrand and the buyer as Mike Mezher. The exchange identified the property as the Schrands' home on Fort View, as stated in the subject line of the email chain. The exchange contained a sale price of $982,500. Finally, the emails contained an electronic signature of the parties to be charged. *See* R.C. 1306.06(C) (where the law requires a signature of the party to be charged, an electronic signature suffices). But, the parties' email exchange contemplated that the parties would sign a formal document. Thus, in determining whether the statute of frauds is satisfied, the question becomes whether the parties intended to enter into a contract at the time of the email exchanges.

{¶11} An agreement can be specifically enforced even where the parties contemplated execution of a formal written document, so long as the parties have manifested an intent to be bound and their intentions are sufficiently definite. *Normandy Place Assoc. v. Beyer*, 2 Ohio St.3d 102, 105-106, 443 N.E.2d 161 (1982). In determining whether the parties intended to be bound, courts can look at the circumstances surrounding the parties' discussion. *26901 Cannon Rd. LLC v. PSC Metals, Inc.*, 8th Dist. Cuyahoga No. 80986, 2002-Ohio-6050, ¶ 17. Moreover, the

6

question of whether the parties intended a contract is a factual question for the finder of fact. *Normandy Place* at 105, citing *Arnold Palmer Golf Co. v. Fuqua Indus., Inc.*, 541 F.2d 584, 588 (6th Cir.1976) (applying Ohio law).

{¶12} In this case, once the parties had agreed upon a purchase price, Mike Mezher stated, "we can get a simple contract drafted Monday and have it signed by us Tuesday with the earnest money cashier check to you upon acceptance of contract by Tuesday." The Schrands responded, "We accept." Even though this language indicated that both parties anticipated executing a formal document, neither party expressly indicated that a formally-executed document was necessary before the parties could be bound by the sale.

{¶13} When the Mezhers presented the Schrands with a formal document on October 5, the identity of the buyer had changed from Mike Mezher to Christine Mezher. According to Ms. Schrand's affidavit, she had not been made aware of Christine's involvement until October 5. Mike Mezher's affidavit does not address why the buyer had changed in the October 5 document. The October 5 document also contained other terms of the sale that had not been expressly agreed upon by the parties prior to that time, according to Ms. Schrand, including sale of items within the home, such as appliances and chandeliers, and the scope of the inspection contingency.

{¶14} According to Ms. Schrand, at the October 5 meeting, Mike Mezher's wife had stated to her that the Mezhers were "considering" buying the property. Ms. Schrand also averred that she had not received any earnest money at this meeting. According to Mike Mezher, he had the earnest money in the form of a $10,000 check at the October 5 meeting. Ms. Schrand further averred that the email exchange had

lacked many items that she had deemed customary or standard for a real-estate purchase agreement.

{¶15} Given the circumstances surrounding the parties' email exchange and later discussions, including that other terms of the sale had yet to be agreed upon, an issue of fact exists as to whether the parties had a present intention to be bound at the time of the email exchange, or whether the parties did not intend to be bound until execution of the more formal contract. Thus, the trial court erred in granting summary judgment to the Schrands, because a genuine issue of material fact exists as to whether a contract had been made. As a corollary, the trial court did not err in denying the Mezhers' motion for summary judgment.

### *Standing*

{¶16} The Schrands argue that Mike and Joseph Mezher lack standing to pursue a breach-of-contract claim, because the October 5 document identified Christine Mezher as the buyer. This assertion lacks merit. As a general rule, "a particular party's standing, or lack thereof, does not affect the subject-matter jurisdiction of the court in which the party is attempting to obtain relief." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 23. Except for subject-matter jurisdiction, issues not raised to the trial court cannot be raised for the first time on appeal. *See Greenwood v. Taft, Stettinius & Hollister*, 105 Ohio App.3d 295, 302, 663 N.E.2d 1030 (1st Dist.1995). Moreover, the complaint alleged that the email exchange created a binding contract between the Schrands and Mike Mezher, not Christine. The complaint alleged that Joseph Mezher owned the Fort View building next door, subject to the demolition permit, which allegedly started the feud between the Schrands and the Mezhers. Joseph Mezher had a

particularized need for the sidewalk on the Schrands' property to aid in construction, and therefore the Mezhers sought specific performance as a remedy.

### *Conclusion*

{¶17} We sustain the Mezhers' first assignment of error, and overrule the Mezhers' second assignment of error. We reverse the judgment of the trial court and remand the cause for further proceedings.

Judgment reversed and cause remanded.

ZAYAS, P.J., and MYERS, J., concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.